[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 229.]

THE STATE EX REL. ROSE ET AL. *v.* LORAIN COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Rose v. Lorain Cty. Bd. of Elections*, 2000-Ohio-65.]

*Elections—Mandamus sought to compel Lorain County Board of Elections and Columbia Township to place a referendum issue involving a zoning amendment approved by the Columbia Township Board of Trustees on the November 7, 2000 election ballot—Neither R.C. 3501.38(I) nor (K) prohibits the withdrawal of previously filed petitions and the submission of either new petitions or resubmission of combined but unaltered petitions before the filing deadline—Writ granted.*

Neither R.C. 3501.38(I) nor (K) prohibits the withdrawal of previously filed petitions and the submission of either new petitions or the resubmission of combined but unaltered petitions before the filing deadline. (*State ex rel. Weaver v. Wiethe* [1965], 4 Ohio St.2d 1, 33 O.O.2d 1, 210 N.E.2d 881, and its progeny, overruled to the extent that they are inconsistent herewith.)

(No. 00-1593—Submitted September 26, 2000—Decided October 5, 2000.)

IN MANDAMUS.

{¶ 1} On May 1, 2000, the Columbia Township Board of Trustees approved Amendment 00-02 to the Columbia Township Zoning Resolution. The amendment added alternate members to both the Columbia Township Zoning Commission and the Columbia Township Board of Zoning Appeals and authorized the zoning inspector to approve uses to fulfill the intent of certain zoning districts.

{¶ 2} On May 26, relator Thomas J. Rose, the sole petitioner for the referendum of the township zoning amendment, filed a petition with the Clerk of Columbia Township, requesting that the amendment be submitted to the electors at the November 7, 2000 general election for a referendum. The first petition

consisted of two part-petitions and contained twenty valid signatures. On May 30, Rose filed his second petition for a referendum on the amendment. The second petition consisted of nine part-petitions and contained one hundred sixty-nine valid signatures. Under R.C. 519.12(H), one hundred sixty-eight valid signatures were required for a valid Columbia Township referendum petition.

{¶ 3} On May 31, Rose attempted to withdraw his first and second referendum petitions and resubmit them as one petition, consisting of eleven part-petitions and containing one hundred eighty-nine valid signatures. Rose's attorney specified that in doing so, Rose had "elected his right to *amend* the petition" and that his eleven part-petitions were being resubmitted "as *amended*." (Emphasis added.)

{¶ 4} On June 6, the Columbia Township Board of Trustees submitted the petitions to respondent Lorain County Board of Elections with its recommendation that the board of elections find the petitions insufficient because the first petition did not contain sufficient valid signatures, the second petition could not be filed, and the petitions could not be withdrawn and resubmitted as one document. On July 25, the board of elections declined to consider the issue and returned the petitions to the board of trustees.

{¶ 5} On August 11, relators, Rose and other taxpayer-residents of Columbia Township, demanded that the board of elections certify the township zoning amendment for the November 7, 2000 election ballot. On August 21, following a hearing, the board of elections rejected relators' demand.

{¶ 6} On September 1, relators filed this action for a writ of mandamus to compel respondents, the board of elections and Columbia Township, to place the amendment on the November 7, 2000 election ballot. Respondents filed an answer, and the parties filed evidence and briefs pursuant to the expedited election schedule set forth in S.Ct.Prac.R. X(9).

**{¶ 7}** This cause is now before the court upon a consideration of the merits of relators' mandamus claim.

————————————

*Phillips & Co., L.P.A.*, and *Gerald W. Phillips*, for relators.

*Gregory A. White*, Lorain County Prosecuting Attorney, and *Gerald A. Innes*, Assistant Prosecuting Attorney, for respondents.

————————————

**LUNDBERG STRATTON, J.**

**{¶ 8}** Relators assert that they are entitled to the requested extraordinary relief in mandamus to compel the board of elections and the township to place the referendum issue on the November 7 election ballot. Relators contend that the board of elections abused its discretion and disregarded applicable law by refusing to place the referendum issue on the November 7 election ballot. According to relators, Rose had a common-law right to withdraw his first and second petitions and resubmit them as one petition.

**{¶ 9}** We are cognizant that "[t]he initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law." Section 1f, Article II of the Ohio Constitution. Moreover, " ' "[p]rovisions for municipal initiative or referendum should be liberally construed in favor of the power reserved so as to permit rather than preclude the exercise of such power, and the object sought to be attained should be promoted rather than prevented or obstructed." ' " *Christy v. Summit Cty. Bd. of Elections* (1996), 77 Ohio St.3d 35, 40, 671 N.E.2d 1, 5, quoting *State ex rel. King v. Portsmouth* (1986), 27 Ohio St.3d 1, 4, 27 OBR 73, 75, 497 N.E.2d 1126, 1128, quoting *State ex rel. Sharpe v. Hitt* (1951), 155 Ohio St. 529, 535, 44 O.O. 489, 491, 99 N.E.2d 659, 662.

{¶ 10} R.C. 519.12(H) requires that each referendum petition on a zoning resolution amendment adopted by a board of township trustees "[i]n addition to meeting the requirements of this section, * * * *shall be governed by the rules specified in section 3501.38 of the Revised Code*." (Emphasis added.) See, also, *Markus v. Trumbull Cty. Bd. of Elections* (1970), 22 Ohio St.2d 197, 199, 51 O.O.2d 277, 279, 259 N.E.2d 501, 502. The board of elections determined that R.C. 3501.38 prohibited relators from filing any petition besides Rose's first petition.

{¶ 11} In construing R.C. 3501.38, our paramount concern is the legislative intent in enacting the statute. *In re Election Contest of Democratic Primary Held May 4, 1999 for Clerk, Youngstown Mun. Court* (2000), 88 Ohio St.3d 258, 265, 725 N.E.2d 271, 277. We must first review the statutory language. Words and phrases used shall be read in context and construed according to the rules of grammar and common usage. *State ex rel. Antonucci v. Youngstown City School Dist. Bd. of Edn.* (2000), 87 Ohio St.3d 564, 565, 722 N.E.2d 69, 71; R.C. 1.42.

{¶ 12} R.C. 3501.38 provides:

"All * * * petitions presented to or filed with * * * a board of elections * * * for the holding of an election on any issue shall, in addition to meeting the other specific requirements prescribed in the sections of the Revised Code relating thereto, be governed by the following rules:

" * * *

"(I) *No alterations, corrections, or additions may be made to a petition after it is filed in a public office*.

" * * *

"(K) *All separate petition papers shall be filed at the same time, as one instrument*." (Emphasis added.)

4

**{¶ 13}** Respondents contend that R.C. 3501.38(I) and (K) prohibit the withdrawal and refiling of the petitions as the refiling constitutes an amendment. Therefore, we must reexamine R.C. 3501.38(I) and (K).

*R.C. 3501.38(I)*

**{¶ 14}** R.C. 3501.38(I), read literally, makes eminent sense. A voter should have confidence that the petition he or she signed reflects all of the information and only the information assented to by the signatory. In this provision, the General Assembly ensures that what the voter signed is what is filed. Thus, under R.C. 3501.38(I), it would not be proper for the petitioner to withdraw the petition, change a date, and then resubmit the same petition. See *State ex rel. Clinard v. Greene Cty. Bd. of Elections* (1990), 51 Ohio St.3d 87, 554 N.E.2d 895. This would defeat the purpose of the R.C. 3501.38(I) requirement that petitions, once filed, not be altered. However, nowhere in R.C. 3501.38(I) does the language of the statute prohibit *withdrawal* of a petition.

**{¶ 15}** In this case, the petitioner did not alter the petitions in any way. He simply refiled the same petitions that had been previously signed by the voters. Therefore, since the petitioner only withdrew and refiled the petitions without alteration, we conclude that R.C. 3501.38(I) does not prohibit what occurred in this case.[1] The mere withdrawal of the petitions is not an alteration, correction, or addition to the petitions. While an alteration, correction, or addition would involve some sort of physical change to the petitions, a withdrawal merely involves the removal of the petitions from the public office in which they were filed. After the withdrawal of the petitions, there is nothing before the public office and, therefore, there is nothing to be acted upon. Rose may even be permitted to withdraw and discard previously filed petitions, and then refile a new petition before the filing

---

1. Although Rose's attorney specified that by attempting to withdraw the first and second petitions and resubmit them, Rose was exercising his "right to *amend*" the petitions and resubmit them "as *amended*" (emphasis added), we find that he was actually attempting to withdraw the petitions, combine them, and resubmit them as one unaltered instrument.

deadline, because a new petition with fresh signatures ensures the integrity of the contents of the petition.

{¶ 16} Accordingly, since R.C. 3501.38(I) expressly deals only with alterations, corrections, and additions to petitions filed and in the possession of the public office, but contains no express provision prohibiting the withdrawal of the petitions, we therefore hold that R.C. 3501.38(I) does not prohibit the withdrawal and refiling of Rose's combined petitions.

*R.C. 3501.38(K)*

{¶ 17} Respondents also claim that R.C. 3501.38(K) bars the filing of the two previously withdrawn and now combined petitions. The respondents contend that the petition, once filed, may not be withdrawn and refiled, for to do so would constitute an amendment. However, upon carefully examining the statute, we conclude that R.C. 3501.38(K) does not expressly prohibit the withdrawal and refiling of a petition.

{¶ 18} The respondents rely on our holdings in at least three prior cases that appear to prohibit withdrawal and refiling of petitions. First, in *State ex rel. Weaver v. Wiethe* (1965), 4 Ohio St.2d 1, 33 O.O.2d 1, 210 N.E.2d 881, a candidate for city council filed a nominating petition consisting of several separate petition papers containing an insufficient number of valid signatures. After the board of elections took action on his petition and notified the candidate of the insufficiency, he attempted to withdraw his nominating petition to obtain additional valid signatures on additional petition papers and to refile at a later time. We held that the city charter, which read much like R.C. 3501.38(K), precluded the candidate from withdrawing his petition papers or filing additional papers. *Id.* at 3, 33 O.O.2d at 2, 210 N.E.2d at 882. Moreover, we concluded that R.C. 3501.38(I) prohibited adding to a petition after it is filed in a public office. *Id.*

{¶ 19} Second, in *State ex rel. Senn v. Cuyahoga Cty. Bd. of Elections* (1977), 51 Ohio St.2d 173, 5 O.O.3d 381, 367 N.E.2d 879, a candidate filed several

part-petitions and then later, upon learning that he had not filed his master form, filed that form on a later date. It is unclear whether the candidate attempted to withdraw his first set of petitions. However, either way, he was barred when he attempted to file his master form. We held that this attempted filing violated R.C. 3513.05, which is analogous to the "one instrument" provision of R.C. 3501.38(K).

{¶ 20} Finally, in *State ex rel. McMillan v. Ashtabula Cty. Bd. of Elections* (1992), 65 Ohio St.3d 186, 602 N.E.2d 631, a candidate for county court judge submitted a petition containing insufficient valid signatures on July 2, 1992. Upon learning of the deficiency, the candidate filed additional petition papers with sufficient valid signatures on August 4, 1992. The board of elections accepted the second filing. We granted a writ of prohibition and ordered the board of elections to remove the candidate's name from the ballot. Under R.C. 3513.05, both the master form and all separate petition papers must be filed at the same time as one instrument. We held that "[u]nder this authority, a candidate may file only one declaration of candidacy and set of petition papers as one instrument with the board of elections." *Id.* at 189, 602 N.E.2d at 633.

{¶ 21} We agree that a candidate may file only one instrument. However, we find that *Weaver* is inconsistent with the intent of the General Assembly in R.C. 3501.38(I) and (K). Accordingly, we overrule *Weaver* and its progeny. Despite our prior interpretation of R.C. 3501.38(I) and (K), we now hold that there is no express language in either R.C. 3501.38(I) or (K) prohibiting the withdrawal of a petition. Therefore, we conclude that neither R.C. 3501.38(I) nor 3501.38(K) expressly prohibits the action taken in this case, namely, the withdrawal of petitions previously filed and the refiling of those combined and unaltered petitions. Accordingly, to the extent that our prior case law holds otherwise, we clarify today that neither R.C. 3501.38(I) nor (K) prohibits the withdrawal of previously filed petitions, combining those petitions, and then refiling them as one unaltered instrument.

**{¶ 22}** We recognize the maze of technical requirements through which candidates and petitioners must travel in order to comply with filing requirements. Thus when a candidate or petitioner files a petition and then learns before the filing deadline that the petition has some deficiency, the process is benefited, rather than harmed, by permitting the petitioner the opportunity to cure the defect by withdrawing the petition and filing a newly signed petition. Our previous interpretation did not "liberally construe" the process in favor of referenda. By allowing a petitioner to correct any technical mistakes by a withdrawal and resubmission of a combined but unaltered petition by the filing deadline, or by withdrawing previously filed petitions and submitting fresh petitions signed anew by the voters, we promote the exercise of such power rather than the prevention or obstruction of that power. *Christy*, *supra*, 77 Ohio St.3d at 40, 671 N.E.2d at 5. Therefore, we conclude that neither R.C. 3501.38(I) nor (K) prohibits the withdrawal of previously filed petitions and the submission of either new petitions or the resubmission of combined but unaltered petitions before the filing deadline.

**{¶ 23}** In this case, Rose withdrew his petitions, combined them, and resubmitted them as one instrument. Rose did not alter, correct, or add to the petitions. He submitted the combined petitions at the same time, as one unaltered document, as per R.C. 3501.38(I) and (K). Rose preserved both the integrity of the contents of his petitions as well as the constitutional right of referendum.

**{¶ 24}** Therefore, because we overrule our previous line of cases and modify the law accordingly, we conclude that under the plain language of the provisions, R.C. 3501.38(I) is inapplicable because Rose did not alter the petitions and R.C. 3501.38(K) does not operate to bar Rose from withdrawing the two petitions, combining them, and resubmitting them as one unaltered instrument before the filing deadline. Thus, the board of elections is ordered to place relators' combined and unaltered petition on the November 7, 2000 election ballot.

**{¶ 25}** Accordingly, the writ of mandamus is hereby granted.

8

*Writ granted.*

MOYER, C.J., F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS and RESNICK, JJ., concur separately.

COOK, J., dissents.

————————————

**DOUGLAS, J., concurring**.

{¶ 26} I concur in the well-reasoned majority opinion. I write separately only for the purpose of reemphasizing the sacrosanct character of the right of referendum, which has deep roots in our country's history.[2] "When the people of Ohio amended their state [C]onstitution one of the primary, paramount purposes to be effected in the amendment was to give the people of Ohio the final word by referendum upon legislative acts * * *. This right of referendum is stated and safeguarded again and again in the [C]onstitution. Indeed one cannot read the Constitution of 1912 without being persuaded again and again that it was the systematic studied effort of the people to check the arbitrary power of the general assembly and of our courts in the administration of the people's government.

{¶ 27} "In addition to the referendum provided upon laws of a general nature the Constitution gave specifically to the people of the cities the right of referendum upon all 'additional laws' affecting their government before they should become operative in the cities." *Cleveland v. Pub. Util. Comm.* (1919), 100 Ohio St. 121, 153, 125 N.E. 864, 873 (Wanamaker, J., dissenting).

{¶ 28} Referendum is a right of the people to have legislative enactments submitted for their approval or rejection at an election. In this manner, a referendum is a mechanism for the citizens of a community to assert their interests and maintain a check over their elected representatives. *Eastlake v. Forest City*

---

2. The concept of referendum was introduced in the United States as early as 1776 in Thomas Paine's pamphlet entitled "Common Sense." Chesley, The Current Use of the Initiative and Referendum in Ohio and Other States (1984), 53 U.Cin.L.Rev. 541, 543.

*Enterprises, Inc*. (1976), 426 U.S. 668, 678, 96 S.Ct. 2358, 2364, 49 L.Ed.2d 132, 140. Thus, procedural limitations on the referendum should be interpreted as narrowly as possible to preserve the constitutional right to referendum.

{¶ 29} Finally, not one of the cases that were cited in support of respondents' position involved a referendum petition. For this reason, I believe that the cases cited by respondents are distinguishable from the case at bar. Accordingly, while I would distinguish rather than overrule the cases overruled by the majority, I nevertheless concur.

RESNICK, J., concurs in the foregoing concurring opinion.

_____

**COOK, J., dissenting.**

{¶ 30} Because the majority opinion permits what the statute and decisional law forbids, I must respectfully dissent from the majority's decision to grant the writ.

{¶ 31} As the majority notes, even Rose's attorney characterized Rose's conduct as electing to use his "right to *amend* the petition" and resubmit the eleven part-petitions "as *amended*." (Emphasis added.) "Amend" is defined as "to put right," "to change or modify in any way for the better," or "to alter * * * formally by modification, deletion, or addition." Webster's Third New International Dictionary (1986) 68. Therefore, Rose's "amendment" is simply another word for alteration, correction, or addition—actions that are expressly precluded by the plain language of R.C. 3501.38(I). The majority has recast Rose's amendment as merely a withdrawal and refiling. This characterization, however, relies upon semantic distinctions to vitiate long-standing requirements.

{¶ 32} Under R.C. 3501.38(I) and (K), the board of elections could have considered only the first petition filed by Rose in assessing sufficiency. The second petition and the resubmitted petition consisting of the papers included in the first and second petitions were either improper amendments or additions to the first

10

petition, as prohibited by R.C. 3501.38(I), or were filed at different times following the first petition, as prohibited by R.C. 3501.38(K).

{¶ 33} The majority cites the axiom that it is the general duty of courts to liberally construe municipal referendum petitions to permit rather than to preclude the exercise of the power of referendum. *Christy v. Summit Cty. Bd. of Elections* (1996), 77 Ohio St.3d 35, 40, 671 N.E.2d 1, 5. But given the clarity of the language of the statutory provisions at issue here, we need not look to interpretative rules. See *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 186, 724 N.E.2d 771, 774. The majority's construction contravenes the statutory language by allowing relators to amend and refile petitions that R.C. 3501.38(I) and (K) prohibit. This view thwarts the statutory scheme. Now, no set of petitions can be held to constitute an "instrument" under R.C. 3501.38(K) until the last second of the last day that constitutes the filing deadline. Until that time, the majority would have any prior filing remain subject to continual withdrawal and refiling.

{¶ 34} The majority permits "alterations, corrections, or additions" after filing by characterizing what occurred here as a "withdrawal." This approach diminishes the finality that the statutory scheme attaches to *filed* petitions. This diminished legal significance seems irreconcilable with provisions of R.C. 3501.38 that emphasize the act of filing as the point at which the rights of petition circulators and signers change. R.C. 3501.38(G), for example, provides that "[t]he circulator of a petition may, *before filing* it in a public office, strike from it any signature he does not wish to present as a part of his petition." (Emphasis added.) Similarly, R.C. 3501.38(H) provides that "[a]ny signer of a petition may remove his signature therefrom at any time *before the petition is filed* in a public office * * * [but] no signature may be removed *after the petition is filed* in any public office." (Emphasis added.) If the prior filing is not considered filed, or, as the majority states, "there is nothing before the public office and, therefore, there is nothing to be acted upon," then petition circulators or electors may arguably strike specific

signatures from the petitions at will following "withdrawal." The majority would disagree, as shown by its continual use of "unaltered" to describe the refiled petitions. But the majority cannot have it both ways. On the one hand, the majority deems a petition that has been filed and then withdrawn as subject to R.C. 3501.38(I)'s prohibition on alterations, corrections, or changes, which applies only to *filed* petitions. On the other hand, the majority at the same time regards such a petition as *not filed* in order to avoid conflict with R.C. 3501.38(K)'s mandate that "[a]ll separate petition papers shall be filed at the same time, as one instrument."

{¶ 35} This majority opinion will also generate confusion regarding R.C. 3501.38(A). That section ties decisions as to qualifications of electors to "the date when the petition is filed." Thus it becomes unclear under the majority's new construction of these election laws which filing should be used: the first filing, which the majority has controlling some portions of R.C. 3501.38, or the final filing, which constitutes the filing that "counts" for the one-instrument requirement. Would the majority have separate petitions that are filed and then withdrawn evaluated for purposes of determining qualified electors whenever they are first filed—despite R.C. 3501.38(K)'s clear mandate that "[a]ll separate petition papers shall be filed at the same time"? If the final filing date should be used, the statute is rendered arbitrary in the application of its provisions, with electors and election officials left to guess what applies when.

{¶ 36} The single filing that R.C. 3501.38 appears to contemplate would resolve this confusion; something is either filed or it is not. The multiple-filings construction that the majority adopts illogically recognizes the withdrawn petition as filed for every purpose save the requirement that all petition papers be filed at once.

{¶ 37} Accordingly, I would hold that the board of elections neither abused its discretion nor clearly disregarded applicable law in denying relators' demand to place the referendum issue on the November 7, 2000 election ballot. Only relators'

12

first petition was properly before the board of elections, and that petition included insufficient valid signatures to warrant submission of the referendum issue to the electorate.  I would therefore deny the writ and leave well-established precedent undisturbed.  This holding would not jeopardize the right to referendum; it would just require that the right be exercised in proper legal form.

———————————