[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 352.]

THE STATE EX REL. MILES *v.* MCSWEENEY, CITY CLERK, ET AL.

[Cite as *State ex rel. Miles v. McSweeney*, 2002-Ohio-4455.]

*Elections—Mandamus sought to compel Columbus City Clerk to submit referendum petition on Columbus City Ordinance No. 0754-02, which imposes an excise tax on the short-term rental of passenger vehicles in Columbus to the city council at its next regular meeting—Writ granted— Relator's request for attorney fees denied for want of four affirmative votes.*

(No. 2002-1317—Submitted August 23, 2002—Decided August 30, 2002.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶1} On June 24, 2002, the Council of the city of Columbus, Ohio, enacted Columbus City Ordinance No. 0754-02, which imposes an excise tax of $4 per passenger vehicle per day upon the short-term rental of passenger vehicles within Columbus. The Acting Mayor of Columbus approved the ordinance on June 25, 2002. The specified effective date of the ordinance was August 1, 2002.

{¶2} Relator, Kevin Miles, an elector and taxpayer of Columbus, is a member of a committee formed to circulate a referendum petition on Ordinance No. 0754-02. On July 3, 2002, Miles, on behalf of the committee, filed a certified precirculation copy of the referendum petition and Ordinance No. 0754-02 with the office of respondent Columbus City Clerk Timothy McSweeney. The petition requested that the ordinance either be repealed by the city council or be submitted to the electorate at the November 5, 2002 general election. Following the filing of the certified copy of the referendum petition, the part-petitions were circulated.

**{¶3}** On July 23, 2002, Miles filed the referendum petition with the city clerk's office. The petition consisted of 483 part-petitions and contained more than 11,000 signatures. The petition was defective because it lacked the circulator affidavits required by Section 49 of the Columbus Charter. See, e.g., *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 475, 764 N.E.2d 971, where we held that the comparable provision of Section 42 for initiative petitions required a circulator affidavit. Instead, the petition contained unnotarized circulator statements.

**{¶4}** On the morning of July 24, 2002, Miles withdrew the petition. Later that day, Miles refiled the previously filed 483 part-petitions and 3 new part-petitions as one instrument with the city clerk. Three hundred ninety-five of the previously filed part-petitions and the 3 newly submitted part-petitions contained notarized circulator affidavits that verified that (1) each circulator was a qualified Ohio elector residing at the stated address, (2) each circulator was the circulator of the specified part-petition containing the noted number of signatures, (3) each circulator witnessed the affixing of every signature on the part-petition, with each signature appended thereto in the circulator's presence, and (4) to the best of each circulator's knowledge and belief, all signers were qualified to sign, and every signature was the signature of the person whose signature it purported to be. The remaining 88 part-petitions were resubmitted without circulator affidavits. July 24, 2002, was the final day for a valid referendum petition on Ordinance No. 0754-02 to be filed to prevent the ordinance from becoming effective. Section 48, Columbus Charter.

**{¶5}** According to McSweeney, at least 27 part-petitions of the 486 part-petitions submitted by Miles on July 24 contain some alteration to the original unnotarized circulator statements, e.g., circulators' names and signatures crossed out and other circulators' names and signatures added. Nevertheless, McSweeney presented no evidence that these corrections occurred *after* the initial July 23, 2002

filing of the petition. In fact, Miles stated in an affidavit that no changes were made to the petition between the time it was withdrawn and the time it was refiled.

{¶6} By letter dated July 25, 2002, McSweeney advised Miles and other members of the petitioning committee that the resubmitted referendum petition was insufficient and invalid because the resubmission of the petition with attached circulator affidavits constituted an improper alteration, addition, or correction to the petition. McSweeney stated that although he would not submit the petition to the city council for further action, he would nevertheless forward the petition to the Franklin County Board of Elections for its determination of the number of valid signatures on the petition.

{¶7} On July 29, 2002, the petitioning committee requested, pursuant to R.C. 733.59, that the Columbus City Attorney file suit to compel McSweeney to submit the referendum petition to city council and to enjoin the city from beginning to collect the rental tax on August 1, 2002. On July 30, 2002, the city attorney denied the committee's request.

{¶8} On July 31, 2002, Miles, on relation of both the state and the city, filed this action for a writ of mandamus to compel McSweeney to immediately submit the referendum petition to the city council at its next regular meeting, provided that the board of elections certified the sufficiency of the number of valid signatures on the petition, and stayed or enjoined implementation of the ordinance. Miles also named Columbus City Auditor Hugh J. Dorrian as a respondent because he has the duty under Ordinance No. 0754-02 to administer and enforce it. Miles filed a motion to expedite a briefing schedule.

{¶9} On August 2, we granted an alternative writ, issued an expedited schedule for the presentation of evidence and briefs, and stayed the implementation of Ordinance No. 0754-02.

{¶10} On that same date, the board of elections certified that the referendum petition contained 4,189 valid signatures, which is more than the 3,922 signatures

required under Section 48 of the Columbus Charter. These valid signatures were contained in those part-petitions that included circulator affidavits. After receiving the board's certification of the sufficiency of the petition, McSweeney again notified the petitioners, including Miles, that he would not submit the petition to the city council for the reasons he had previously specified.

**{¶11}** This cause is now before the court for a consideration of the merits.

**{¶12}** Miles requests a writ of mandamus to compel McSweeney to perform his legal duties under Section 50 of the Columbus Charter by submitting the petition to the city council at its next regular meeting.

**{¶13}** In order to be entitled to the requested writ of mandamus, Miles must establish a clear legal right to have McSweeney submit the referendum petition to the city council at its next regular meeting, a corresponding clear legal duty on the part of McSweeney to do so, and the lack of an adequate remedy in the ordinary course of the law. *Ditmars*, 94 Ohio St.3d at 474, 764 N.E.2d 971. Miles has established that he lacks an adequate remedy in the ordinary course of the law. See, e.g., *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 291-292, 649 N.E.2d 1205, quoting *State ex rel. Smart v. McKinley* (1980), 64 Ohio St.2d 5, 6, 18 O.O.3d 128, 412 N.E.2d 393 ("Concerning the third prerequisite for a writ * * *, given the proximity of the election, an injunction would arguably not constitute an adequate remedy because any 'appellate process would last well past the election' "). Therefore, we must determine whether Miles proved the remaining requirements for extraordinary relief in mandamus.

**{¶14}** Under Section 50 of the Columbus Charter, McSweeney, as the city clerk, has a duty, within ten days after the filing of a referendum petition, to certify the number of signatures appended and submit the petition to the city council at its next regular meeting:

**{¶15}** "All papers comprising any such petition shall be assembled and filed with the city clerk as one instrument. *The city clerk shall, within ten days after the*

4

*filing thereof, certify thereon the number of signatures thereto appended, and shall submit the petition to the council on the date of its next regular meeting.* If the petition contains the required number of signers, the council shall, within thirty days after the date of filing such referendum petition by the city clerk, repeal the ordinance therein sought to be repealed, or shall order and provide for the submission of such ordinance to a vote of the electors of the city at an election to be held not less than sixty days thereafter." (Emphasis added.)

{¶16} McSweeney refused to submit the petition under Section 50 of the charter because he determined that the petition violated R.C. 3501.38(I), which mandates that "[n]o alterations, corrections, or additions may be made to a petition after it is filed in a public office." See Section 200(b), Columbus Charter ("Except as otherwise provided for in the charter all elections shall be held and conducted and the results thereof ascertained and certified as provided by the general laws of the state and by the election authorities therein provided for").

{¶17} In determining whether R.C. 3501.38(I) applies here, our paramount concern is the legislative intent in enacting the statute. *In re Election Contest of Democratic Primary Held May 4, 1999 for Clerk, Youngstown Mun. Court* (2000), 88 Ohio St.3d 258, 265, 725 N.E.2d 271. The purpose of R.C. 3501.38(I) is to ensure that what the voter signed is what is filed. *State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229, 231-232, 736 N.E.2d 886. In other words, "[a] voter should have confidence that the petition he or she signed reflects all of the information and only the information assented to by the signatory." Id. at 231, 736 N.E.2d 886.

{¶18} In *Rose*, 90 Ohio St.3d 229, 736 N.E.2d 886, syllabus, we held, "Neither R.C. 3501.38(I) nor (K) prohibits the withdrawal of previously filed petitions and the submission of either new petitions or the resubmission of combined but unaltered petitions before the filing deadline." In *Rose*, the referendum petitioner filed a first petition that contained insufficient valid

signatures and a second petition containing sufficient valid signatures. The petitioner withdrew both petitions, combined them, and resubmitted them as one petition.

{¶19} In this case, Miles withdrew the defective referendum petition, attached the required circulator affidavits to 395 of the previously filed 483 part-petitions, and attached circulator affidavits to 3 new part-petitions. The parties agree that under *Rose*, Miles was authorized to withdraw the defective petition.

{¶20} Once the previously filed petition was withdrawn, there was "nothing before the public office and, therefore, there [was] nothing to be acted upon." *Rose*, 90 Ohio St.3d at 232, 736 N.E.2d 886. Consequently, R.C. 3501.38(I) did not prevent the referendum petitioners from attaching the missing circulator affidavits and resubmitting the petition. Consistent with the purpose of the statute and *Rose*, the "alterations, corrections, or additions" specified in R.C. 3501.38(I) should be construed to refer only to changes in the information assented to by the petition signers. So construed, no violation of R.C. 3501.38(I) occurred because signers of the referendum petition were neither deceived nor misled. Cf. *State ex rel. Green v. Casey* (1990), 51 Ohio St.3d 83, 85, 554 N.E.2d 1288 ("the standard for reviewing technical defects in declaration of candidacy and petition papers is whether the defect could cause a signer to be deceived or misled. Correcting an error in arithmetic after a petition has been signed is such a technical defect, and it can not deceive or mislead the signers").

{¶21} This construction of R.C. 3501.38(I) does not contravene the legislative intent of the statute. The petition was not altered, corrected, or added to in a manner that modified the substance of what the petition contained when prospective voters signed it. The affidavits attached to 395 of the previously submitted part-petitions had to be completed by the circulators *after* the part-petitions were signed. The signers assented to what was and is still contained in the petition; no assent to the circulator affidavits was given or necessary.

**{¶22}** Moreover, construing R.C. 3501.38(I) in this manner will not, as respondents claim, permit a petitioning committee to "change or correct the text, dates, or other substantive matters in the petition despite the language of R.C. 3501.38(I)." Those specified changes would concern information assented to by petition signers, which, unlike the matters at issue here, would be prohibited by R.C. 3501.38(I).

**{¶23}** Further, this construction of R.C. 3501.38(I) comports with our duty to liberally construe municipal referendum provisions so as to permit rather than preclude the exercise of this constitutional power. *Ditmars*, 94 Ohio St.3d at 476, 764 N.E.2d 971; Section 1f, Article II, Ohio Constitution.

**{¶24}** Therefore, invalidating the referendum petition here based on the grounds asserted by respondents serves no public interest or public purpose, including the legislative purpose of R.C. 3501.38(I) as expressed in *Rose*. See *Stutzman v. Madison Cty. Bd. of Elections* (2001), 93 Ohio St.3d 511, 515, 757 N.E.2d 297. The election process is benefited, rather than harmed, by permitting the referendum petitioners to cure a defect that does not alter, correct, or add to what petition signers agreed to in signing the petition. Consequently, the withdrawal and refiling of the petition here is not prohibited by R.C. 3501.38(I). See *Rose*, 90 Ohio St.3d at 234, 736 N.E.2d 886; see, also, *State ex rel. Oster v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 480, 486, 756 N.E.2d 649 (court has duty to construe statutes and charters to avoid unreasonable or absurd results).

**{¶25}** Moreover, respondents' reliance on R.C. 731.32 to claim that the filed precirculation copy of the petition differed from the petition filed on July 24 is misplaced. As Miles notes, R.C. 731.32 requires only that a precirculation certified copy of the *ordinance* be filed. And the circulator statement contained on the precirculation copy of the petition filed by relator contained language that was largely identical to the language in the circulator affidavits later attached to the petition.

**{¶26}** Based on the foregoing, Miles has established a clear legal right to have McSweeney submit the referendum petition to the city council for consideration and a clear legal duty on the part of McSweeney to do so. Section 50, Columbus Charter. The withdrawal of the defective petition, the attachment of circulator affidavits to the withdrawn petition, and the resubmission of the petition with some new part-petitions is no more a violation of R.C. 3501.38(I) than the combination of the previously filed and withdrawn referendum part-petitions at issue in *Rose*.

**{¶27}** In addition, under Sections 48 and 50 of the charter, Ordinance No. 0754-02 shall not become operative unless it is approved by a majority of voters at the November 5, 2002 election. Therefore, we grant a writ of mandamus to compel McSweeney to submit the referendum petition to the city council at its next regular meeting.

Alternate Claim

**{¶28}** In so holding, we reject Miles's alternate claim that the pertinent statutory and charter provisions should be construed so that the word "petition" does not include circulator statements or affidavits. Miles's claim in this regard is meritless. R.C. 3501.38(E) specifies that the required circulator statement be contained "[o]n each petition paper," and Section 50 of the Columbus Charter provides that "[a]ll papers comprising any such petition shall be assembled and filed with the city clerk as one instrument." See, also, Section 49, Columbus Charter, which requires that "to each such [petition] paper there shall be attached an affidavit by the circulator * * * ." Because the circulator affidavit is attached to the petition and the petition papers are ultimately filed with the city clerk as *one instrument*, the affidavit becomes part of the petition. As respondents correctly observe, the circulator affidavits are a "necessary component of a valid and complete petition."

Attorney Fees

8

{¶29} Finally, Miles requests attorney fees pursuant to R.C. 733.61. The decision whether to award attorney fees to relator in a successful R.C. Chapter 733 taxpayer suit is committed to the discretion of the court. *State ex rel. Commt. for the Charter Amendment Petition v. Avon* (1998), 81 Ohio St.3d 590, 595, 693 N.E.2d 205. In exercising this discretion, courts consider whether the case resulted in a public benefit and if respondents had a reasonable basis to support their position. Id.

{¶30} In this case, even though respondents' position is incorrect, an award of attorney fees is not warranted because their interpretation of R.C. 3501.38(I) and precedent was not irrational. See *State ex rel. Cater v. N. Olmsted* (1994), 69 Ohio St.3d 315, 321-322, 631 N.E.2d 1048. *Rose* is, as Miles concedes, not factually identical to the case at bar, and we clarify the scope of that decision in this case.

Conclusion

{¶31} Based on the foregoing, we grant a writ of mandamus to compel respondent McSweeney to submit the referendum petition to the city council at its next regular meeting. Columbus Ordinance No. 0754-02 will not become operative unless it is approved by a majority of voters at the November 5, 2002 election. We further deny relator's request for attorney fees.

Writ granted.

MOYER, C.J., F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, RESNICK and PFEIFER, JJ., concur in part and dissent in part.

COOK, J., dissents.

———————————

**DOUGLAS, J., concurring in part, dissenting in part.**

{¶32} I concur with the majority on the main issue discussed in the opinion. I respectfully dissent as to the denial of attorney fees to Miles. To compel this relator to absorb the cost of seeking redress through the courts when his cause is legally correct will, I believe, discourage other similarly situated citizens from

bringing such an action even when they are sure that they are correct and when, in the end, their position would be vindicated.

RESNICK and PFEIFER, JJ., concur in the foregoing opinion.

_____

**COOK, J., dissenting**.

**{¶33}** In *State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229, 736 N.E.2d 886, a majority of this court permitted a referendum petitioner to withdraw separately filed petitions, combine them, and resubmit them as one instrument. That holding undercut the requirements of R.C. 3501.38 by ignoring the plain meaning of the statutory language. See id. at 235-237, 736 N.E.2d 886 (Cook, J., dissenting) (filing a referendum petition consisting of papers included in previously filed and withdrawn petitions violates both R.C. 3501.38[I][improper amendments to first petition] and R.C. 3501.38[K] [improper filing of petition material]). Today's majority compounds this error by not only permitting the withdrawal and refiling of petition papers previously filed, but by now permitting a party to file *additional* material that had *never* been filed—in contravention of *Rose*'s charge that a petitioner "preserve[e] * * * the integrity of the contents of his petitions" and not "alter, correct, or add to the petitions." Id. at 234, 736 N.E.2d 886.

**{¶34}** R.C. 3501.38(I) unambiguously prohibits any "alterations, corrections, or additions" to a petition "after it is filed in a public office." "Addition" means "anything added," and "alteration" means "a change in a legal instrument that changes its legal effect." Webster's Third New International Dictionary (1986) 24 and 63. Here, without the circulator affidavits, the original filing was invalid. By resubmitting the petitions as altered by the addition of the circulator-affidavits required by Section 49 of the Columbus Charter, the later filing also contravened R.C. 3501.38(I). Because Miles withdrew, altered, and then

refiled the defective referendum petition in contravention of a statutory provision, I respectfully dissent and would deny the writ.

_____

Kegler, Brown, Hill & Ritter and Thomas W. Hill; Phillip L. Harmon, for relator.

Janet E. Jackson, Columbus City Attorney, Daniel W. Drake and Susan E. Ashbrook, Assistant City Attorneys, for respondents.

_____