THE STATE EX REL. CANALES–FLORES *v.* LUCAS
COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Canales–Flores v. Lucas Cty. Bd.
of Elections,* 108 Ohio St.3d 129, 2005-Ohio-5642.]

(No. 2005–1853—Submitted October 14, 2005—Decided October 25, 2005.)

**Per Curiam.**

{¶ 1} This is an expedited election case in which a prospective candidate for city council seeks a writ of mandamus to have her name placed on the November 8, 2005 election ballot.

{¶ 2} On September 4, 2005, the person holding the office of Member of Toledo City Council, District Six, resigned to assume his new position as Lucas County Treasurer. Pursuant to Section 15A, Chapter III of the Toledo Charter, an election to fill the vacancy is scheduled for November 8, 2005.

{¶ 3} On September 13, relator, Lisa Canales–Flores, submitted a nominating petition to respondent Lucas County Board of Elections to have her name placed on the November 8 ballot as a candidate to fill the council vacancy.

{¶ 4} On September 19, the board of elections reviewed Canales–Flores's petition and determined that it contained sufficient valid signatures. The petition papers, however, did not contain properly completed circulator affidavits, as required by Section 14, Chapter III of the Toledo Charter. Although Canales–Flores had circulated all of the petition papers, the notary public that she had used had erroneously completed the circulator statements.

{¶ 5} At the September 19 board meeting, Canales–Flores submitted an affidavit attesting that all of the signatures appended to the petition papers were made in her presence and that the signatures were the genuine signatures of the persons they purported to be. The board voted to certify Canales–Flores's nominating petition and place her name on the November 8 ballot for the council seat.

{¶ 6} On September 21, an elector within District Six filed a protest contesting Canales–Flores's candidacy. On September 27, the board of elections held a hearing on the protest. Based upon advice from its attorney and the office of the Secretary of State of Ohio, the board voted to decertify Canales–Flores's candidacy.

{¶ 7} On September 29, Canales–Flores presented to the elections board a new nominating petition to become a candidate for the vacant council seat. The board refused to accept the new petition.

{¶ 8} On September 30, Canales–Flores brought this expedited election action for a writ of mandamus to compel the board of elections to place her name on the November 8 election ballot as a candidate for the office of Member of the Toledo City Council, District Six. Canales–Flores also named the board members and

director as additional respondents. Respondents answered the complaint, and the parties filed evidence and briefs pursuant to the accelerated schedule in S.Ct.Prac.R. X(9).

{¶ 9} This cause is now before us for a consideration of the merits.

## Mandamus

{¶ 10} Canales–Flores requests a writ of mandamus to compel the board of elections to place her name on the November 8, 2005 election ballot for the office of Member of Toledo City Council, District Six. In order to be entitled to the requested writ, Canales–Flores must establish a clear legal right to have her name placed on the November 8 election ballot, a corresponding clear legal duty on the part of the board of elections to place her name on the ballot, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Choices for South–Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 29. Given the proximity of the November 8 election, Canales–Flores has established that she lacks an adequate remedy in the ordinary course of law. Id. at ¶ 30.

{¶ 11} For the remaining requirements, " '[i]n extraordinary actions challenging the decision of a board of elections, the applicable standard is whether the board engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or pertinent law.' " *State ex rel. Stevens v. Geauga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 223, 226, 736 N.E.2d 882, quoting *State ex rel. Valore v. Summit Cty. Bd. of Elections* (1999), 87 Ohio St.3d 144, 145, 718 N.E.2d 415. Canales–Flores does not allege fraud or corruption, so the dispositive issue is whether respondents abused their discretion or clearly disregarded applicable law by ruling her initial petition invalid and refusing to accept her second petition.

## First Petition

{¶ 12} As Canales–Flores concedes, the nominating petition that she submitted to the board of elections on September 13 was invalid because it did not contain a proper circulator affidavit for each of the petition papers. See Section 14, Chapter III of the Toledo Charter ("Signatures to nominating petitions need not be appended to one paper, but to each separate paper there shall be attached an affidavit of the circulator thereof, stating that each signature thereto was made in his or her presence and is the genuine signature of the person whose name it purports to be").

{¶ 13} Canales–Flores contends, however, that when she submitted her affidavit at the September 19 board meeting, this submission cured any defect in the petition. In her affidavit, Canales–Flores specified that she had circulated the petition papers and that all of the petition signatures were made in her presence and were genuine signatures of the persons they purport to be.

{¶ 14} Canales–Flores claims that based on *State ex rel. Miles v. McSweeney*, 96 Ohio St.3d 352, 2002-Ohio-4455, 775 N.E.2d 468, her correction of the petition was permissible. In *Miles*, we granted a writ of mandamus to compel a city clerk to submit a referendum petition to the city council at its next regular meeting. We held that the petitioner did not violate R.C. 3501.38(I), which prohibits "alterations, corrections, or additions" to a petition after it is filed, by withdrawing a defective petition, attaching required circulator affidavits, and refiling the amended petition. Id. at ¶ 24, 775 N.E.2d 468. See, also, *State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229, 736 N.E.2d 886, syllabus ("Neither R.C. 3501.38(I) nor (K) prohibits the withdrawal of previously filed petitions and the submission of either new petitions or the resubmission of combined but unaltered petitions before the filing deadline").

{¶ 15} For the following reasons, Canales–Flores's reliance on *Miles* is misplaced.

{¶ 16} First, after *Rose* and *Miles*, the General Assembly enacted Am.Sub.H.B. No. 455, 149 Ohio Laws, Part V, 9083, 9090, which precluded the withdrawal of petitions such as those that had been permitted in those cases. See R.C. 3501.38(I)(2) ("No petition may be withdrawn after it is filed in a public office").

{¶ 17} Second, Canales–Flores never withdrew her petition. Instead, she attempted to file an affidavit that would be appended to the petition. Even if R.C. 3501.38(I)(2) did not exist or was inapplicable to her petition, Canales–Flores would not have been entitled to the application of the *Miles* and *Rose* holdings. See *State ex rel. Commt. for the Charter Amendment Petition—The Millikin Woods Preservation Assn. v. Hamilton* (2001), 93 Ohio St.3d 508, 510, 757 N.E.2d 294 ("the committee did not withdraw its initial petition and attempt to resubmit it with additional part-petitions as one instrument here. Therefore, *Rose* is inapposite and R.C. 3501.38(I) and (K) prohibited the committee from filing additions to the first petition and submitting different parts of the petition at different times").

{¶ 18} Third, Canales–Flores's submission of a new affidavit violated R.C. 3501.38(K) ("All separate petition papers shall be filed at the same time, as one instrument") and Section 14, Chapter III of the Toledo Charter ("to each separate paper there shall be attached an affidavit of the circulator" and "[a]ll separate papers comprising a nominating petition shall be assembled and filed with the election authorities as one instrument * * * "). The affidavit was not filed "at the same time, as one instrument" with the petition filed on September 13, and the affidavit was not attached to each separate petition paper.

{¶ 19} Therefore, the board of elections neither abused its discretion nor clearly disregarded applicable law by ruling Canales–Flores's initial petition invalid and voting to decertify her name from the November 8 election ballot.

## Second Petition

{¶ 20} Canales–Flores next asserts that the board of elections abused its discretion and clearly disregarded applicable law by refusing to accept her timely submission of a new nominating petition on September 29.

{¶ 21} The board's refusal was based on R.C. 3513.261 and 3513.05. R.C. 3513.261 prohibits a board of elections from accepting a nominating petition of a person seeking to be a candidate for a municipal office if that person has already filed a nominating petition to be a candidate for a municipal office at the same election:

{¶ 22} "The secretary of state or a *board of elections shall not accept for filing a nominating petition of a person seeking to become a candidate if that person, for the same election, has already filed* a declaration of candidacy, a declaration of intent to be a write-in candidate, or *a nominating petition,* or has become a candidate through party nomination at a primary election or by the filling of a vacancy under section 3513.30 or 3513.31 of the Revised Code for any state or county office, if the nominating petition is for a state or county office, or *for any municipal* or township *office,* for member of a city, local, or exempted village board of education, or for member of a governing board of an educational service center, *if the nominating petition is for a municipal* or township *office,* or for member of a city, local, or exempted village board of education, or for member of a governing board of an educational service center." (Emphasis added.)

{¶ 23} R.C. 3513.05 contains a comparable provision:

{¶ 24} *"The* secretary of state or a *board of elections shall not accept for filing a declaration of candidacy and petition of a person seeking to become a candidate if that person, for the same election, has already filed a declaration of candidacy* or a declaration of intent to be a write-in candidate, or has become a candidate by the filling of a vacancy under section 3513.30 of the Revised Code for any state or county office, if the declaration of candidacy is for a state or county office, or *for any municipal* or township *office, if the declaration of candidacy is for a municipal* or township *office."* (Emphasis added.)

{¶ 25} In construing statutes, "our paramount concern is the legislative intent in enacting the statute." *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. "To discern this intent, we first consider the statutory language, reading words and phrases in context and construing them in accordance with rules of grammar and common usage." *Choices for South–Western City Schools,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, at ¶ 40.

{¶ 26} The plain language of R.C. 3513.261 and 3513.05 prevented the board of elections from accepting Canales–Flores's second nominating petition for filing

because she had already filed a nominating petition for a municipal office—Member of Toledo City Council, District Six—for the same election. The phrase "*any* municipal * * * office" is worded broadly enough to encompass a previous nominating petition for the *same* municipal office. (Emphasis added.) See *Weiss v. Pub. Util. Comm.* (2000), 90 Ohio St.3d 15, 17, 734 N.E.2d 775, quoting *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 340, 673 N.E.2d 1351 ("In *Purdy,* we adopted the meaning of the word 'any' as set forth in Webster's Third New International Dictionary (1971) 97: ' "Any" means "one or some indiscriminately of whatever kind" ' "). Similarly, Canales–Flores had previously "filed" a nominating petition. See Garner, Black's Law Dictionary (8th Ed.2004) 660, defining "file" to mean "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record."

{¶ 27} Canales–Flores nevertheless contends that based on a rule of liberal construction, we must conclude that the statutes do not bar her second petition. Cf. *State ex rel. Altiere v. Trumbull Cty. Bd. of Elections* (1992), 65 Ohio St.3d 164, 165, 602 N.E.2d 613, quoting *State ex rel. Schenck v. Shattuck* (1982), 1 Ohio St.3d 272, 274, 1 OBR 382, 439 N.E.2d 891 (" 'Words limiting the right of a person to hold office are to be given a liberal construction in favor of those seeking to hold office, in order that the public may have the benefit of choice from all those who are in fact and in law qualified' ").

{¶ 28} Because R.C. 3513.261 and 3513.05 are unambiguous, however, we must apply them rather than construe them. See *BedRoc Ltd., L.L.C. v. United States* (2004), 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 ("our inquiry begins with the statutory text, and ends there as well if the text is unambiguous"); *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 186, 724 N.E.2d 771 (no need to liberally construe a statute whose meaning is unequivocal and definite). Therefore, no resort to liberal construction or an examination of the legislative history is warranted. See, e.g., *L.J. Minor Corp. v. Breitenbach* (1996), 77 Ohio St.3d 168, 171, 672 N.E.2d 636, quoting *Storer Communications, Inc. v. Limbach* (1988), 37 Ohio St.3d 193, 194, 525 N.E.2d 466 (" 'An unambiguous statute is to be applied, not interpreted' "); R.C. 1.49.

{¶ 29} Canales–Flores nevertheless relies on language in R.C. 3513.052(G), which specifies that nothing in that statute, R.C. 3513.261, or R.C. 3513.05 prohibits a person from being a candidate for an office if that person timely withdraws as a candidate for any of the offices specified in R.C. 3513.052(A) for which that person first sought to become a candidate:

{¶ 30} "Nothing in this section or section 3513.04, 3513.041, 3513.05, 3513.251, 3513.253, 3513.254, 3513.255, 3513.257, 3513.259, or 3513.261 of the Revised Code prohibits, and the secretary of state or a board of elections shall not disqualify, a person from being a candidate for an office, if that person timely withdraws as a

candidate for any offices specified in division (A) of this section for which that person first sought to become a candidate by filing a declaration of candidacy and petition, a declaration of intent to be a write-in candidate, or a nominating petition, by party nomination in a primary election, or by the filling of a vacancy under section 3513.30 or 3513.31 of the Revised Code."

{¶ 31} Under R.C. 3513.052(H)(2), " 'Timely withdraws' means either of the following:

{¶ 32} "(a) Withdrawing as a candidate before the applicable deadline for filing a declaration of candidacy, declaration of intent to be a write-in candidate, or nominating petition for the subsequent office for which the person is seeking to become a candidate at the same election;

{¶ 33} "(b) Withdrawing as a candidate before the applicable deadline for the filling of a vacancy under section 3513.30 or 3513.31 of the Revised Code, if the person is seeking to become a candidate for a subsequent office at the same election under either of those sections."

{¶ 34} R.C. 3513.052, however, does not support Canales–Flores's claim. The statute is expressly directed to forbidding persons to seek *multiple offices* at the same election. See R.C. 3513.052(A). R.C. 3513.052(G) provides a method for a person to avoid violating the multiple-office-candidacies prohibition of R.C. 3513.052(A) through the mechanism of a timely withdrawal of an initial candidacy for an office at the same election. Neither R.C. 3513.261 nor 3513.05, which by their plain language apply to more situations than does R.C. 3513.052, is limited to this circumstance. If the General Assembly had intended to restrict these statutes to persons seeking more than one office at the same election, it would have done so with appropriate language, as it did in R.C. 3513.052. Cf., e.g., *Choices for South–Western City Schools*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, at ¶ 53.

{¶ 35} In addition, R.C. 3513.052(G) requires a timely withdrawal of a candidacy before a person can avoid being disqualified as a candidate for another office at the same election. Canales–Flores never timely withdrew as a candidate, and R.C. 3513.052(H)(2) does not equate the invalidation of a nominating petition with the timely withdrawal of a candidacy. We will not infer what the General Assembly did not provide. Adopting Canales–Flores's construction of the pertinent statutes would result " 'not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted * * * may be included within its scope.' " *Lamie v. United States Trustee* (2004), 540 U.S. 526, 538, 124 S.Ct. 1023, 157 L.Ed.2d 1024, quoting *Iselin v. United States* (1926), 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566.

{¶ 36} In sum, R.C. 3513.052 does not prevent the application of R.C. 3513.261 and 3513.05 to bar a second nominating petition for the same office at the same election after the first nominating petition has been ruled invalid.

{¶ 37} In effect, Canales–Flores asks this court to add the word "valid" before "nominating petition" so that R.C. 3513.261 would read, "The * * * board of elections shall not accept for filing a nominating petition of a person seeking to become a candidate if that person, for the same election, has already filed * * * a *valid* nominating petition * * * for any municipal * * * office * * *, if the nominating petition is for a municipal * * * office." (Emphasis added.) This we cannot do. See *State ex rel. Lee v. Karnes*, 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 25, quoting *State v. Hughes* (1999), 86 Ohio St.3d 424, 427, 715 N.E.2d 540 (" 'In construing a statute, we may not add or delete words' ").

{¶ 38} Canales–Flores further asserts that these statutes, as construed to prevent her second petition, are unconstitutional if construed to prevent her candidacy. Canales–Flores has not established beyond a reasonable doubt that the statutes are unconstitutional. *State ex rel. Watson v. Hamilton Cty. Bd. of Elections* (2000), 88 Ohio St.3d 239, 242, 725 N.E.2d 255. R.C. 3513.261 and 3513.05 do not prevent individuals from securing a position on the election ballot, and they present only a minimal requirement on prospective candidates to file a valid nominating petition the first time that they submit it. Cf. *Purdy*, 77 Ohio St.3d at 343–344, 673 N.E.2d 1351. The statutes thus require only that petitioners "get it right the first time." This requirement can hardly be termed a burden. In fact, only seven out of 186 prospective candidates who submitted nominating petitions with the board of elections for the November 8, 2005 election failed—like Canales–Flores—to include a valid circulator's affidavit with their petitions.

{¶ 39} The amended statutory requirements prohibiting withdrawal of a petition after it has been filed and barring a successive nominating petition can be justified by the state's interests in having orderly elections and avoiding confusion that multiple nominating petitions could cause boards of elections. If Canales–Flores's construction of these statutes is adopted, a prospective candidate could conceivably file multiple defective petitions tying up an elections board's scarce resources, but still be permitted to be placed on the ballot as long as one valid petition is filed in a timely fashion.

{¶ 40} Canales–Flores's suggestion that the General Assembly lacked any rationale to depart from the court's rulings in *Rose* and *Miles* is also misplaced. As then Justice Deborah Cook noted in her dissenting opinion in *Rose*, 90 Ohio St.3d at 236, 736 N.E.2d 886 (Cook, J., dissenting), permitting a withdrawal of a petition after it has been filed might be considered to "diminish[ ] the finality that the statutory scheme attaches to *filed* petitions," and "[t]his diminished legal

significance seems irreconcilable with provisions of R.C. 3501.38 that emphasize the act of filing as the point at which the rights of petition circulators and signers change." (Emphasis sic.) Although the majority of this court in *Rose* and *Miles* held otherwise based upon the language of the statutes in effect at that time, we did not suggest that the General Assembly could not reasonably disagree and determine that a balancing of the various interests favored amending these provisions to prohibit a prospective candidate from withdrawing a petition after it had been filed with a board of elections. See *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 14 ("The Ohio General Assembly, and not this court, is the proper body to resolve public policy issues"); *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672 ("the General Assembly should be the final arbiter of public policy").

{¶ 41} Canales–Flores finally asserts that the Toledo Charter supersedes the statutes. But the charter specifically incorporates nonconflicting Revised Code provisions like R.C. 3513.261 and 3513.05. Toledo Charter, Section 11, Chapter III ("the provisions of the general laws of the State shall apply to all such elections except as provision is otherwise made by this Charter").

{¶ 42} Therefore, the board of elections neither abused its discretion nor clearly disregarded applicable law by applying R.C. 3513.261 and 3513.05 and refusing to accept Canales–Flores's second petition for filing.

## Conclusion

{¶ 43} Based on the foregoing, the board of elections acted properly when it ruled Canales–Flores's first petition invalid and refused to accept her second petition for filing. Therefore, Canales–Flores has not established her entitlement to the requested extraordinary relief. Accordingly, we deny the writ.

*Writ denied.*

MOYER, C.J., RESNICK, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

———————

**PFEIFER, J., dissenting.**

{¶ 44} To deny Lisa Canales–Flores a place on the ballot, assuming that her second nominating petition is complete, is to do worse than elevate form over substance: it is to elevate bureaucracy over democracy. This court is instituting a "get it right the first time or perish" rule that the General Assembly, in my view, did not contemplate.

{¶ 45} This court's duty is to liberally construe limitations on the right to be an eligible candidate in order to permit electors to choose from all qualified candidates. R.C. 3513.261 touches the gamut of would-be political candidates,

from Governor to township trustee. While a gubernatorial candidate may have staff and lawyers to monitor his or her nominating petitions for perfection, a normal citizen, someone not of the political class, does not have that same backup. The rule enunciated today may cause people running for Governor or Secretary of State or Supreme Court a sleepless night or two; it might also needlessly knock off the ballot willing people who seek only to serve their communities. The voters, not just the failed would-be candidates, will suffer in those instances.

{¶ 46} In construing statutes, "our paramount concern is the legislative intent in enacting the statute." *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. "To discern this intent, we first consider the statutory language, reading words and phrases in context and construing them in accordance with rules of grammar and common usage." *State ex rel. Choices for South–Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, at ¶ 40.

{¶ 47} The language of R.C. 3513.261 and 3513.05 is unclear about whether the General Assembly intended to preclude a prospective candidate from filing a successive nominating petition if the candidate's first petition had been ruled invalid. In fact, the preeminent focus of the language appears to prevent a person from becoming a candidate for multiple offices in the same election.

{¶ 48} "If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters * * * [t]he legislative history." R.C. 1.49(C); see, also, *State ex rel. Zonders v. Delaware Cty. Bd. of Elections* (1994), 69 Ohio St.3d 5, 11, 630 N.E.2d 313.

{¶ 49} The General Assembly added the pertinent language of R.C. 3513.261 and 3513.05 as part of Am.Sub.H.B. No. 445, 149 Ohio Laws, Part V, 9083, which became effective on December 23, 2002. The title to Am.Sub.H.B. No. 445 specifies that two of the purposes of the act were "to specify that no person may seek to be a candidate for two or more specified offices that will be voted on at the same election" and "to require a board of elections or the Secretary of State to reject any declaration of candidacy, declaration of intent to be a write-in candidate, or a nominating petition filed by a person who is a candidate for a specified office at the same election." Id., 149 Ohio Laws, Part V, at 9084.

{¶ 50} Canales–Flores was not a candidate for any office at the November 8, 2005 election at the time she filed her second petition on September 29. Instead, because the board of elections had invalidated her first petition, she was not a candidate for any office on that date, much less the District Six City Council seat she seeks. Therefore, based on the manifest intent of the General Assembly in enacting the language in question, Canales–Flores was not barred by R.C. 3513.261 and 3513.05 from filing her second petition.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

Vassar, Dills, Dawson & Bonfiglio and Keith A. Wilkowski, for relator.

Julia R. Bates, Lucas County Prosecuting Attorney, and John A. Borell, Assistant Prosecuting Attorney, for respondents.