THE STATE EX REL. GEMIENHARDT v. DELAWARE
COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Gemienhardt v. Delaware Cty. Bd.
of Elections,* 109 Ohio St.3d 212, 2006-Ohio-1666.]

(No. 2006-0497—Submitted March 28, 2006—Decided April 5, 2006.)

**Per Curiam.**

{¶ 1} This is an expedited election case in which an elector seeks a writ of mandamus to compel an elections board and its members to submit a township zoning-amendment resolution to the electorate at the May 2, 2006 election.

*Zoning Amendments*

{¶ 2} On September 13, 2005, the Berlin Township Zoning Commission proposed certain amendments to the Berlin Township Zoning Resolution and forwarded them to the Delaware County Regional Planning Commission for review and redrafting. The planning commission redrafted the proposed zoning amendments and journalized them in its September 29, 2005 minutes.

{¶ 3} The proposed amendments "[i]nsert[ed] zoning text amendments to the existing R–3 District and related sections, and * * * add[ed] a new R–4 district" without rezoning any land. The planning commission minutes noted the following background for the proposed amendments:

{¶ 4} "1. Berlin Township has initiated amendments to its comprehensive land use plan * * * that will increase future residential densities in areas that will be served by sanitary sewer. The additional densities are 1.5 units per net developable acre and 1.85 units per net developable acre.

{¶ 5} "2. To accommodate these densities, the zoning text must be amended to allow for Planned Residential Developments ['PRDs'] to overlay the appropriate zoning district. The R–3 is an existing district, with 20,000 square foot lots. A PRD overlay at this density would yield 1.85 units per net developable acre. The R–4 district is written as a new district with 25,000 square foot[ ] lots, which will yield a density of 1.5 units per developable acre when overlaid by PRD zoning."

{¶ 6} The proposed amendments were to Articles IX, X, and XI of the Berlin Township Zoning Resolution.

{¶ 7} On October 11, 2005, the zoning commission recommended that the Berlin Township Board of Trustees adopt the proposed amendments to the Berlin Township Comprehensive Plan. According to Gemienhardt, the zoning commission's recommendation was for the board of trustees to adopt the proposed amendments "as journalized in the Minutes of the Regional Planning Commission." The minutes of the zoning commission's October 11, 2005 meeting, however, provided only the following regarding the proposed amendments:

{¶ 8} "Motion BZC 10–11–05–05 by Ron Bullard that we include additional densities of 1.5 units per developable acre and 1.85 units per net developable acre and, to accommodate these densities and the zoning text to allow for Planned Residential Developments to overlay the appropriate zoning district. The R–3 is an existing district, with 20,000 square foot lots. A PRD overlay at this density would yield 1.85 units per net developable acre. The R–4 district is written as a new district with 25,000 square foot lots, which will yield a density of 1.5 units per net developable acre when overlaid by PRD zoning, and that we pass these changes reflected on the 9–14–05 Draft 2005 Comprehensive Land Use Plan Map to the Trustees with our recommendation that it be approved. * * * Motion passed."

{¶ 9} The parties agree, however, that "[n]o other version of the amendments, except the version journalized in the Minutes of the Regional Planning Commission, are part of the files of the Zoning Commission or the Trustees."

{¶ 10} On November 28, 2005, the board of trustees passed Berlin Township Resolution No. 05–11–42, which adopted the proposed zoning amendments with the following language:

{¶ 11} "Move to accept case # 05–009 with recommended modifications given to us by the Berlin Zoning Commission to reflect changes in the district and density designations on the Comprehensive Land Use Plan Map for R–3 (1.85 du/acre) and R–4 (1.5 du/acre) as presented."

{¶ 12} At the same meeting, the board of trustees amended the comprehensive land-use map for Berlin Township to reflect the amendments adopted in the resolution. The board of trustees made one handwritten change to the map provided by the planning commission by adding the notation "area hatched in black proposed to be 1.5 units/acre." This change reflected a request by the board of trustees after its October 11, 2005 meeting that certain property be designated as permitting a density of 1.5 units per net developable acre instead of 1.85 units per net developable acre.

214

Referendum Petition

{¶ 13} After the board of trustees adopted the township zoning-amendment resolution, relator, Rick Gemienhardt, a township elector, obtained a copy of the amendments and the map of the area affected by them from the Berlin Township Clerk.

{¶ 14} Gemienhardt filed with the board of trustees a referendum petition seeking to submit Berlin Township Resolution No. 05–11–42 to township electors at the May 2, 2006 election. On each part of the petition, Gemienhardt put the title and number of the resolution.

{¶ 15} Gemienhardt also included the following summary of the zoning amendments:

{¶ 16} "Berlin Township has initiated amendments to its comprehensive land use plan that will increase future residential densities in areas that will be served by sanitary sewer. The additional densities are 1.5 per net developable acre and 1.85 units per developable acre. To accommodate these densities Resolution # 05–11–42 amends the zoning text to allow for Planned Residential Developments to overlay the appropriate zoning district. The R–3 is an *existing* district, with 20,000 square foot lots. A PRD overlay at this density would yield 1.85 units per net developable acre. The R–4 district is a *new* district with 25,000 square foot lots, which will yield a density of 1.5 units per net developable acre when overlaid by PRD zoning. The PRD is an *existing* district with amendments to reference the R–3 and R–4 districts. This referendum petition is applicable to the *changes* made to articles IX–Multi–type Residential District (R–3) and XI–Planned Residential District (PRD) and to the *creation* of article X–Multi–type Residential District (R–4). The Comprehensive Land Use Map changes are not subject to referendum and are not being submitted to the electors of Berlin Township for approval or rejection but are presented for informational purposes only. Highlights of the three (3) amendments are:

{¶ 17} **"Article IX–Multi–type Residential District R–3.** Section 9.01–Purpose: The R–3 district is intended to provide for a variety of housing types at a density of one unit per 20,000 feet square feet [sic], or approximately 1.85 units per net developable acre. Section 9.02–Application: The R–3 district is intended to be applied to lands recommended on the adopted Berlin Township Comprehensive Plan for densities of a maximum of 1.85 units per net developable area. Section 9.03A.–Residential structures of any type, either single family or multi-family, including but not limited to detached, semi-detached, attached, industrialized units (modular), permanently sited manufactured homes, common wall or any reasonable variation on the same theme. A minimum net lot size of twenty thousand (20,000) square feet per dwelling unit shall be required for this conditional use.

{¶ 18} "**Article X–Multi-type Residential District R–4.** Section 10.01–Purpose: The R–4 district is intended to provide for a variety of housing types at a density of one unit per 25,000 square feet, or approximately 1.5 units per net developable acre. Section 10.02–Application: The R–4 district is intended to be applied to lands recommended on the adopted Berlin Township Comprehensive Plan for densities of a maximum of 1.5 units per net developable area. Section 10.03–Permitted Uses: Within the Multi–Type Residential District (R–4), the following permitted uses exist: (A). Residential structures of any type, either single family or multi-family, including but not limited to detached, semi-detached, attached, industrialized units (modular), permanently sited manufactured homes, common wall or any reasonable variation on the same theme. A minimum net lot size of twenty five thousand (25,000) square feet per dwelling unit shall be required for this conditional use.

{¶ 19} "**Article XI–Planned Residential District (PRD).** Section 11.03–Location of Planned Residential (Open Space) Developments: Planned Residential Development zoning may be overlaid on the FR–1 the R–2, R–3 and R–4 zones pursuant to a zoning map amendment approved by the township. Section 11.05 Design Features–(k.) The required percent of open space shall be provided. The percent of open space varies according to zoning district overlaid; FR–1–40% (of gross tract area) open space; R–2, R–3 and R–4–20% (of gross tract area) open space.

{¶ 20} "The text of Resolution 05–11–42 as passed by the Trustees on November 28, 2005 is attached hereto." (Emphasis sic.)

{¶ 21} Gemienhardt attached to the referendum petition the full text of the proposed zoning amendments as contained in the planning commission minutes and adopted by the board of trustees. Gemienhardt also attached a copy of the map approved by the board of trustees, reflecting the proposed zoning amendments. The map was entitled "Draft 2005 Berlin Township Comprehensive Land Use Plan" and included the board of trustees' notation that an area hatched in black was proposed to be 1.5 units per acre.

{¶ 22} Respondents, the Delaware County Board of Elections and its members, determined that the petition contained more than the legally required number of valid signatures of qualified Berlin Township electors to place the referendum issue on the ballot. On January 5, 2006, the board of trustees certified the petition to the board of elections for placement of the referendum issue on the May 2, 2006 election ballot.

*Prosecuting Attorney's Opinion Letter*

{¶ 23} On January 10, 2006, the director of the elections board requested that the Delaware County Prosecuting Attorney give his opinion on whether the referendum petition complied with applicable legal requirements.

{¶ 24} On February 10, 2006, the prosecuting attorney concluded that the petition is defective because (1) not all of the petition parts contain the number and the full and correct title of the resolution that was the subject of the referendum, (2) the brief summary of the resolution is misleading, inaccurate, and contains material omissions, (3) the attachment to the petition of the minutes of the planning commission is not in fact a copy of Resolution No. 05–11–42, although the petition claims it is, and (4) the map attached to the petition is confusing and misleading and does not accurately show the areas affected by the proposed zoning amendments. The prosecuting attorney recommended that the referendum petition be rejected and that the proposed zoning amendments not be placed on the May 2, 2006 election ballot.

{¶ 25} On February 21, 2006, in reliance upon the prosecuting attorney's opinion, the board of elections voted not to certify the petition and not to place the issue on the May 2, 2006 election ballot.

## Protest

{¶ 26} On February 24, 2006, Gemienhardt filed a protest with the board of elections. On March 7, 2006, the elections board conducted an evidentiary hearing on the protest. At the conclusion of the hearing, the board voted three-to-one to deny Gemienhardt's protest and sustain its earlier determination not to place the referendum issue on the ballot.

## Mandamus Case

{¶ 27} On March 9, 2006, Gemienhardt filed this expedited election case for a writ of mandamus to compel respondents to certify the petition and submit the referendum issue on Berlin Township Resolution No. 05–11–42 to the township electors at the May 2, 2006 primary election.[1] On March 20, 2006, respondents filed an answer and a memorandum in opposition to Gemienhardt's memorandum in support of his complaint. On March 24, 2006, we denied Gemienhardt's motion for an interim order directing the elections board to put the referendum issue on absentee ballots for the May 2, 2006 election pending our resolution of this case on the merits. Gemienhardt timely submitted his merit brief and evidence, but the board of elections and its members did not file a merit brief and evidence.

{¶ 28} This cause is now before the court for our decision on the merits.

---

1. In his complaint, Gemienhardt requested in the alternative that the issue be placed on the November 7, 2006 election ballot. Nevertheless, his referendum petition specified the May 2, 2006 election, and under R.C. 519.12(H), the May 2, 2006 election is the appropriate election. See R.C. 519.12(H) ("next primary or general election that occurs at least seventy-five days after the petition is filed").

## Mandamus

{¶ 29} Gemienhardt claims entitlement to a writ of mandamus to compel the board of elections and its members to certify the referendum petition and to submit Resolution No. 05–11–42 to the township electorate on May 2, 2006. In order to obtain the requested writ of mandamus, Gemienhardt must establish a clear legal right to certification of the referendum issue on the May 2, 2006 election ballot, a corresponding clear legal duty on the part of the board of elections to certify the referendum issue, and the lack of an adequate remedy in the ordinary course of the law. See *Rust v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 139, 2005-Ohio-5795, 841 N.E.2d 766, ¶ 7. Given the proximity of the May 2 election, Gemienhardt has established that he lacks an adequate remedy in the ordinary course of law. *State ex rel. Canales–Flores v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 129, 2005-Ohio-5642, 841 N.E.2d 757, ¶ 10.

{¶ 30} For the remaining requirements, " '[i]n extraordinary actions challenging the decision of a board of elections, the applicable standard is whether the board engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or pertinent law.' " *State ex rel. Stevens v. Geauga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 223, 226, 736 N.E.2d 882, quoting *State ex rel. Valore v. Summit Cty. Bd. of Elections* (1999), 87 Ohio St.3d 144, 145, 718 N.E.2d 415. Gemienhardt does not allege fraud or corruption, so the dispositive issue is whether the board of elections and its members abused their discretion or clearly disregarded applicable law by accepting the prosecuting attorney's recommendation and denying Gemienhardt's protest. "An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 305, 686 N.E.2d 238.

## Number and Full and Correct Title of Zoning–Amendment Resolution

{¶ 31} Respondents claim that the referendum petition violates the R.C. 519.12(H) requirement that "[e]ach part of this [referendum] petition shall contain the number and the full and correct title, if any, of the zoning amendment resolution * * *" because the title and number of Berlin Township Zoning Resolution No. 05–11–42 appears on only the first page of the part-petitions instead of on each page.

{¶ 32} In interpreting R.C. 519.12(H), our paramount concern is legislative intent. *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 22. "To discern this intent, we first consider the statutory language, reading words and phrases in context and construing them in accordance with rules of grammar and common usage." *State ex rel. Choices for South–Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 40.

{¶ 33} Reading the applicable words in context, we find it evident that "part" is not synonymous with "page." A "part" is "one of the equal or unequal portions into which something is divided." Webster's Third New International Dictionary (1986) 1645. A "page," on the other hand, is "one of the leaves of a" publication or "a single side of one of these leaves." Id. at 1620.

{¶ 34} In a petition for a referendum of a township zoning-amendment resolution, a part or part-petition refers to each petition circulated for signatures and includes the name and number of the proposed zoning amendment, a summary of the amendment, a request to submit the amendment to the township electors at an election, spaces for elector signatures, and a statement of an elector circulating the part-petition. See R.C. 519.12(H), which includes a form for the petition; R.C. 303.12(H) (providing similar requirements for referendum petitions on county rural-zoning-amendment resolutions); Section 1g, Article II, Ohio Constitution (describing comparable requirements for each part of statewide initiative and referendum petitions).

{¶ 35} Nothing in the plain language of R.C. 519.12(H) or in precedent construing this statutory provision supports the board's view that each page of a petition, including attachments, must contain the number and full and correct title of the zoning-amendment resolution. In fact, if the board's conclusion were correct, then the R.C. 519.12(H) requirement that a "brief summary" of the contents of the resolution appear in each part of the petition would also necessitate repeating the summary on each page of each part-petition, including any attachments. The General Assembly could not have intended this unreasonable result. State ex rel. Webb v. Bliss, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, ¶ 22 (court will not approve construction of election statutes that would produce an absurd result).

{¶ 36} Therefore, insofar as the board of elections relied on this ground when it denied Gemienhardt's protest, it clearly disregarded R.C. 519.12(H). Gemienhardt's referendum petition complied with the number-and-title requirement of R.C. 519.12(H).

### Brief Summary and Additional Language

{¶ 37} Respondents also concluded that the referendum petition's "brief summary" of the resolution is defective. Under R.C. 519.12(H), each part of a petition seeking a referendum on a township zoning amendment must also contain a "brief summary" of the contents of the amendment.

{¶ 38} "The phrase 'brief summary of its contents' refers to the zoning resolution passed by the township trustees." State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections (1997), 80 Ohio St.3d 176, 179, 685 N.E.2d 502. Under the applicable test, "[t]he summary must be accurate and unambiguous; otherwise,

the petition is invalid and the subject resolution will not be submitted for vote." *S.I. Dev. & Constr., L.L.C. v. Medina Cty. Bd. of Elections,* 100 Ohio St.3d 272, 2003-Ohio-5791, 798 N.E.2d 587, ¶ 17. Therefore, "[i]f the summary is misleading, inaccurate, or contains material omissions which would confuse the average person, the petition is invalid and may not form the basis for submission to a vote." *Shelly & Sands, Inc. v. Franklin Cty. Bd. of Elections* (1984), 12 Ohio St.3d 140, 141, 12 OBR 180, 465 N.E.2d 883, citing *Markus v. Trumbull Cty. Bd. of Elections* (1970), 22 Ohio St.2d 197, 202, 51 O.O.2d 277, 259 N.E.2d 501. The overriding "purpose of requiring a summary is 'to present fairly and accurately the question or issue to be decided in order to assure a free, intelligent and informed decision by the persons to whom it is presented.'" *State ex rel. Hamilton v. Clinton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 556, 559, 621 N.E.2d 391, quoting *Nunneker v. Murdock* (1983), 9 Ohio App.3d 73, 77, 9 OBR 93, 458 N.E.2d 431.

{¶ 39} The board of elections asserts that Gemienhardt's summary is deficient because (1) it is misleading in that it summarizes the actual textual changes of the zoning amendments instead of Resolution No. 05–11–42, (2) it is incomplete and therefore inaccurate because it refers to only a few of the textual amendments actually approved by the resolution, (3) the summary is misleading and contains inaccuracies and material omissions in that the brief summary states the permitted density in the R–3 zoning district upon the effective date of the amendments, but omits the existing permitted density, (4) the summary inaccurately states that the text of the resolution is attached to the petition when it is not, and (5) the September 29, 2005 minutes of the regional planning commission attached to the petition do not fairly and accurately present the question or issue to the petition signers.

### Summarizing Zoning–Amendment Resolution in Language other than that Provided in Resolution

{¶ 40} Addressing these contentions in order, we hold that a summary need not use the same language as the resolution it is summarizing. We readily acknowledge that "when a referendum petition's summary of a resolution contains substantially the same wording as the resolution itself, we have held that the summary complies with the statutory requirement." *State ex rel. McCord v. Delaware Cty. Bd. of Elections,* 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 43. Consequently, "[w]e will not penalize the township electors' attempt to exercise their right of referendum [by] summarizing the resolution with substantially the same wording as the resolution itself." *State ex rel. C.V. Perry & Co. v. Licking Cty. Bd. of Elections* (2002), 94 Ohio St.3d 442, 445, 764 N.E.2d 411.

{¶ 41} In so holding, however, we have never held that summaries are restricted to the wording of the resolution. In fact, we have recognized that on

rare occasions, the resolution itself might not be readily understandable. See, e.g., *O'Beirne*, 80 Ohio St.3d at 180, 685 N.E.2d 502 (noting that resolution containing approximately 40 pages of incorporated exhibits was not readily understandable).

{¶ 42} Therefore, the mere fact that Gemienhardt did not use the language of the resolution to summarize it does not render the summary defective. In fact, his summary provides more information about the proposed zoning amendments than does the resolution itself.

### Omitting Some of the Zoning Amendments

{¶ 43} By choosing to summarize the resolution in language other than that employed by the board of township trustees, Gemienhardt's additional language had to satisfy the applicable test in R.C. 519.12(H). That is, the summary cannot be misleading, inaccurate, or contain material omissions that will confuse the average person. *McCord*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 45–46.

{¶ 44} The summary here contains material omissions that could have conveyed the mistaken impression to petition signers that only the zoning amendments specified by Gemienhardt in the summary were of major significance to township electors. The actual number of zoning amendments is 13—eight amendments to Article IX, one amendment (with six subsections) adding Article X to create a new R–4 (multi-type residential district) zoning classification, and four amendments to Article XI. In his summary of these amendments, Gemienhardt specified only six of the 13 amendments.

{¶ 45} Among the amendments that Gemienhardt does not summarize are the addition of certain land uses in the amended R–3 zoning classification, i.e., religious land uses, public buildings, adult-family homes, child day care, and common-access-driveway subdivision. In addition, Gemienhardt does not summarize three sections of the amendment creating and defining the new R–4 zoning classification, i.e., the conditional uses, prohibited uses, and developmental standards, and he leaves out much of a section detailing the permitted uses.

{¶ 46} By describing the amendments he included in the summary as "[h]ighlights," Gemienhardt implies that the omitted amendments were not as important, even though this impression might not have been accurate. See Webster's Third New International Dictionary, supra, at 1068, defining "highlight" as "an event, detail, topic, or accomplishment of major significance or special interest." Manifestly, the omission of permitted, conditional, and prohibited uses and developmental standards in a zoning amendment could reasonably be considered material. To be sure, these matters could not be considered to be, as Gemienhardt claimed at the board's protest hearing, mere "housekeeping" matters.

Although Gemienhardt certainly attached the full text of these amendments to his petition, petition signers could have justifiably relied upon his summary language instead of wading through the ten pages of attached regional planning commission minutes before deciding whether to sign the petition.

### Existing Density in R–3 Zoning District

{¶ 47} The board of elections also determined that the summary was misleading because it omitted the existing permitted density in the R–3 zoning district. Although Gemienhardt acknowledged in his summary that the preeminent effect of the amendments would be "to increase future residential densities," and his summary noted that a PRD overlay of the existing R–3 district would yield a density of 1.85 units per net developable acre, his summary did not specify the existing density of the R–3 zoning before the overlay permitted by the proposed amendment. He specified only that the existing R–3 zoning had 20,000 square-feet lots.

{¶ 48} But as a review of the pertinent legislative and administrative records establishes, nothing in the text of the amendments contained in the regional planning commission minutes, the actions taken by the zoning commission, or the board of trustees' resolution sets forth the density of the existing R–3 zoning district, either. Gemienhardt did not need to add something to his summary of the zoning-amendment resolution that was contained in neither the resolution nor the amendments adopted thereby.

### False Statement Concerning Attachment of Text of Resolution No. 05–11–42 and Attachment of Regional Planning Commission Minutes

{¶ 49} The summary inaccurately states, "The text of Resolution 05–11–42 as passed by the Trustees on November 28, 2005 is attached hereto." Gemienhardt concedes that it was his "intent * * * to incorporate the text of the amendments by cross-referencing the text of Resolution 05–11–42 at the end of the summary."

{¶ 50} The November 28, 2005 resolution, however, was not attached to the petition. Instead, Gemienhardt attached ten pages of the amendments contained in the September 29, 2005 regional planning commission minutes.

{¶ 51} By not attaching the text of Resolution No. 05–11–42, Gemienhardt could have misled petition signers into believing that the planning commission minutes constituted the actual resolution, which they did not.

{¶ 52} Moreover, by instead attaching the planning commission minutes, Gemienhardt's petition could have confused petition signers concerning the relationship between the trustees' resolution and the planning commission's minutes, which are dated approximately two months earlier. In fact, the board of trustees adopted recommended changes to the density of certain property in the

affected area that were not reflected in the action by the planning commission and that occurred after the initial action by the zoning commission. In addition, at the protest hearing, Gemienhardt's counsel apologized that the attached planning commission minutes could be "so confusing" to the elections board members.

### Brief–Summary Requirement: Conclusion

{¶ 53} Based on the foregoing, because the summary was inaccurate and contained material omissions that could have misled or confused petition signers about the precise nature and effect of the township zoning-amendment resolution, the board of elections and its members did not act in an unreasonable, arbitrary, or unconscionable manner in concluding that the petition summary did not satisfy the brief-summary requirement of R.C. 519.12(H).

### Appropriate Map

{¶ 54} The board of elections also concluded that the map attached to the referendum petition is misleading and confusing because it is described as a "draft," the summary states that the map changes were not subject to referendum, and the map does not explain which property would be subject to the proposed R–4 zoning designation.

{¶ 55} R.C. 519.12(H) requires that the referendum petition be "accompanied by an appropriate map of the area affected by the zoning proposal." "A map accompanying a referendum petition [is] considered appropriate or suitable for purposes of R.C. 519.12(H) if it does not mislead the average person about the area affected by the zoning resolution." *McCord,* 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 63.

{¶ 56} Notwithstanding the board's conclusion to the contrary, the map used by Gemienhardt is appropriate. The map was specifically approved by the board of township trustees to reflect the zoning amendments approved by the board in Resolution No. 05–11–42. Just as we will not penalize township electors seeking a referendum for summarizing the resolution with substantially the same wording as the resolution itself, *State ex rel. Brown v. Butler Cty. Bd. of Elections,* 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 29, we will also refrain from penalizing these electors for attaching a map that has been approved by the board of trustees as accurately depicting the zoning amendments. Consequently, township electors seeking to exercise their right of referendum need not attach a map that is more accurate than the map approved by the board of trustees.

### Conclusion

{¶ 57} Based on the foregoing, the board of elections neither abused its discretion nor clearly disregarded applicable law by denying Gemienhardt's protest, refusing to certify the petition, and not placing the issue on the May 2,

2006 election ballot. Gemienhardt's petition did not comply with the brief-summary requirement of R.C. 519.12(H), because his summary was inaccurate and contained material omissions that could have misled or confused petition signers about the precise nature and effect of Resolution No. 05–11–42. See *S.I. Dev. & Constr.*, 100 Ohio St.3d 272, 2003-Ohio-5791, 798 N.E.2d 587, ¶ 17; *Shelly & Sands, Inc.*, 12 Ohio St.3d at 141, 12 OBR 180, 465 N.E.2d 883. Although the brief-summary requirement of R.C. 519.12(H) is liberally construed in favor of the right of referendum, Gemienhardt is still required to strictly comply with that requirement. *McCord*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 37–38. Gemienhardt's petition did not do so. Accordingly, we deny the writ.

Writ denied.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

RESNICK, J., not participating.

---

McTigue Law Group, Donald J. McTigue, Mark A. McGinnis, and Robert A. Beattey, for relator.

David A. Yost, Delaware County Prosecuting Attorney, and Christopher D. Betts, Assistant Prosecuting Attorney, for respondents.