THE STATE EX REL. CITIZEN ACTION FOR A LIVABLE MONTGOMERY
*v.* HAMILTON COUNTY BOARD OF ELECTIONS.

[Cite as *State ex rel. Citizen Action for a Livable Montgomery
v. Hamilton Cty. Bd. of Elections,* 115 Ohio St.3d 437,
2007-Ohio-5379.]

(No. 2007–1732—Submitted October 2, 2007—Decided October 8, 2007.)

**Per Curiam.**

{¶ 1} This is an expedited election action for a writ of mandamus to compel a board of elections to include an ordinance proposed by initiative petition on the November 6, 2007 general election ballot. Because the board of elections abused its discretion in determining that the proposed ordinance constituted administrative action, we grant the writ.

{¶ 2} Relator, Citizen Action for a Livable Montgomery, is a group of citizens of the city of Montgomery, Ohio. Citizen Action was formed to place a proposed ordinance known as the Natural Parkland Initiative on the November 6, 2007 election ballot.

{¶ 3} The proposed ordinance directs the acquisition, purchase, establishment, and maintenance of natural parkland along the Montgomery Road corridor in the city and allows for the allocation of money from the city general fund reserve balance to accomplish these objectives:

{¶ 4} "Section I. Acquisition of Nature Park Land. The real estate described in Exhibit A shall be acquired and maintained by the City of Montgomery for park, recreational, and green space preservation purposes. The City of Montgomery shall acquire this land by purchase, and in doing so shall comply with all appropriate procedures and law of Ohio.

{¶ 5} "Section II. Purpose of the Acquisition. The land shall be preserved as a passive park, recreational area, and nature preserve. Construction of facilities within the park shall be limited, with the intent to preserve as much natural vegetation as possible. Such limited construction may include walking paths,

bicycle paths, access to the land from the Safety Center/Montgomery Pool parking area, and a walkway or bridge over the stream.

{¶ 6} "Section III.  Name of the Nature Park. The Montgomery Parks and Recreation Commission shall name the Nature Park.

{¶ 7} "Section IV.  Maintenance of the Nature Park. The Montgomery Parks and Recreation Commission shall direct the construction of facilities and maintenance of the Nature Park. The City of Montgomery, upon the recommendation of the Montgomery Parks and Recreation Commission, is empowered to establish a trust for the purpose of holding and maintaining the Nature Park and any other City of Montgomery Park.

{¶ 8} "Section V.  Establishing an Endowment Fund for the Nature Park. The City of Montgomery, through its actions authorized by Section VI, shall ensure that, in addition to the acquisition of the Nature Park land and establishment of the Nature Park and its basic features and facilities, an endowment is created for the purpose of maintaining the Nature Park. The City Council, upon considering recommendations of the Parks and Recreation Commission, shall determine the size and character of this endowment.

{¶ 9} "Section VI.  Funding the Acquisition, Establishment, and Maintenance of the Nature Park. The City Council shall immediately create and implement a plan to designate funds to accomplish the objectives of this Initiative.  The City Council shall use all appropriate means to comply with this provision, including, but not limited to, the general fund reserve balance, grants, and contributions from government, institutions, citizens, groups, and businesses.

{¶ 10} "Section VII.  Expiration of the Funding.  The City of Montgomery shall cause the expenditure of funds for this Initiative to expire when it has acquired this land, developed natural pathways, constructed facilities, and established an endowment sufficient to maintain the land as a passive park, nature preserve, and recreational area.

{¶ 11} "Section VIII.  Repeal by Electors Only. This ordinance cannot be repealed except by vote of a majority of the electors in a general election to the extent allowed by law.

{¶ 12} "Section IX.  Immediate Implementation.  The City Council shall immediately take all steps necessary to implement the provisions of this initiative.

{¶ 13} "Section X.  Severability.  If any provision in this Initiative is found to be invalid, unlawful, or unenforceable, the remaining provisions shall continue to be valid and enforceable."

{¶ 14} On June 6, in accordance with Section 8.02 of the Montgomery Charter, Citizen Action filed a copy of an initiative petition concerning the proposed ordinance with the Montgomery clerk of council.  Citizen Action circulated the

petition, and on July 13, it filed the petition, which contained 854 signatures, with the clerk of council. The clerk of council sent the petition to respondent, Hamilton County Board of Elections, for signature verification. The board of elections verified that the petition contained 754 valid signatures, which is more than the required number of signatures for placement of the initiative on the election ballot.

{¶ 15} On August 22, the Montgomery City Council determined that the initiative was sufficient and valid and sent the proposed ordinance to the board of elections for placement on the November 6, 2007 ballot.

{¶ 16} Eugene Droder III, a resident of Montgomery, chair of the Montgomery Parks and Recreation Commission, and an attorney who represents the city in labor law matters, filed with the board of elections a written protest against the initiative on behalf of himself and others on September 4. The protesters claimed that the initiative should not be placed on the November 6, 2007 general election ballot because it contained more than one subject and deprived the city of its legislative authority.

{¶ 17} Less than a week later, the protesters filed a supplemental brief in which they claimed that the proposed ordinance constituted an administrative action, rather than a legislative action, and was thus not subject to initiative. The city submitted a brief in support of the protest based on the same grounds. Citizen Action submitted memoranda in opposition to the protest.

{¶ 18} On September 11, the board of elections conducted a hearing on the protest. At the hearing's conclusion, the board voted to not place the proposed ordinance on the ballot. Upholding the protest, the board of elections determined that the initiative constituted administrative action, which was not a proper subject for initiative.

{¶ 19} On September 18, Citizen Action filed this expedited election action for a writ of mandamus to compel the board of elections to include the Natural Parkland Initiative on the November 6, 2007 election ballot. The board submitted a response, and the parties filed evidence and briefs pursuant to the accelerated schedule set forth in S.Ct.Prac.R. X(9). After Citizen Action filed a reply brief to the board's merit brief, the city filed a motion to intervene, a merit brief in support of the board, and evidence, and Residents for a Responsible Montgomery filed an amicus curiae brief in support of the board. On October 1, Citizen Action filed a revised reply brief.

{¶ 20} This cause is now before the court upon the merits.

### Motion to Intervene

{¶ 21} The city of Montgomery seeks to intervene as a respondent in this expedited election case.

{¶ 22} We deny the city's motion and strike its evidence. The city did not file any pleading with its motion. *Tatman v. Fairfield Cty. Bd. of Elections,* 102 Ohio St.3d 425, 2004-Ohio-3701, 811 N.E.2d 1130, ¶ 11 ("Civ.R. 24(C) requires that any * * * motion [to intervene] be accompanied by a pleading 'setting forth the claim or defense for which intervention is sought' "); see, also, *State ex rel. Wilkinson v. Reed,* 99 Ohio St.3d 106, 2003-Ohio-2506, 789 N.E.2d 203, ¶ 12, fn. 1, and cases cited therein. In addition, the city's motion was not timely filed, because, although the city should have known of the filing of this case, it waited until after the parties filed their evidence and briefs before requesting intervention. See, e.g., *State ex rel. Mason v. Griffin,* 104 Ohio St.3d 279, 2004-Ohio-6384, 819 N.E.2d 644, ¶ 10 (motion to intervene in writ case denied as untimely when prospective intervenor waited until after parties had filed evidence and initial briefs before attempting to intervene).

{¶ 23} Because the city is not entitled to intervene, it is also not entitled to file evidence. See S.Ct.Prac.R. X(9), authorizing only parties to file evidence in expedited election cases.

### Amicus Curiae Briefs

{¶ 24} Although we have denied the city's motion to intervene for the reasons previously set forth, the city is entitled to file an amicus curiae brief without leave of court. See *Tatman,* 102 Ohio St.3d 425, 2004-Ohio-3701, 811 N.E.2d 1130, ¶ 12, citing *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections* (1995), 72 Ohio St.3d 69, 70, 647 N.E.2d 769 (court considers amicus curiae brief of a candidate whose motion to intervene in an election case was denied because of his failure to comply with Civ.R. 24(C)). We will therefore treat Montgomery as an amicus curiae. In addition, Residents for a Responsible Montgomery ("Residents"), which proclaims itself to be a group of city residents opposed to the Natural Parkland Initiative and whose members include some of those who filed the protest against the initiative, filed an amicus curiae brief in support of respondent.

{¶ 25} The amici curiae failed to coordinate the filing of their briefs with the brief of the board of elections. As a result, their amicus curiae briefs were filed *after* Citizen Action filed its reply brief to the board's merit brief, which was filed one day before it was due. This unique set of circumstances necessitated affording Citizen Action an additional four days to file a response to these amicus briefs and essentially guaranteed that this case would not be resolved before the absentee-ballot deadline. Nevertheless, because S.Ct.Prac.R. VI(6) and X(8) authorize amicus curiae briefs on behalf of a respondent to be filed within the respondent's filing time and the amici complied by filing on September 27, their briefs were properly submitted.

{¶ 26} Concerning the particular arguments in the amicus briefs, Residents raises an issue that is raised neither by the parties in this case nor by the protesters in the proceedings before the board of elections, i.e., that the city failed to comply with its charter duties regarding the initiative petition. Courts have generally held that *"[a]mici curiae* are not parties to an action and may not, therefore, interject issues and claims not raised by parties." *Lakewood v. State Emp. Relations Bd.* (8th Dist.1990), 66 Ohio App.3d 387, 394, 584 N.E.2d 70; *In re B.B.M.* (Dec. 10, 1997), 4th Dist. No. 97CA2274, 1997 WL 773041, *4, fn. 2; *Cruickshanks v. Haines* (Nov. 18, 1994), 11th Dist. No. 94–L–039, 1994 WL 660629, *2; *State v. D.M. Pallet Serv., Inc.* (Nov. 15, 1994), 10th Dist. No. 94APC02–195, 1994 WL 649982, *1.

{¶ 27} In fact, Residents could have raised this issue in the protest, since some of its members were already before the board of elections. Instead, Residents chose to present the allegation of failure to comply with the charter as an 11th-hour amicus claim after Citizen Action had already submitted a reply brief to the board's merit brief. Residents thus did not exercise the diligence required in election cases and has prevented Citizen Action from presenting evidence to rebut this new claim. See *State ex rel. Commt. for Charter Amendment, City Trash Collection v. Westlake,* 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 16 ("Extreme diligence and promptness are required in election-related matters"). In fact, Citizen Action attempts to submit additional evidence responding to this argument in its amended reply brief. Under these circumstances, we will not address this claim, because it is not properly before us.

{¶ 28} However, in the exercise of our discretion, we will consider the remaining amicus arguments with the merits because they are either raised by the board of elections in its merit brief or were fully litigated in the protest proceedings before the board.

## Laches

{¶ 29} The board claims that Citizen Action's claim is barred by laches because of the seven-day delay in filing the mandamus action after the board upheld the protest against the initiative.

{¶ 30} Although we have held that a delay as brief as nine days can preclude our consideration of the merits of an expedited election case based on laches, see, e.g., *Paschal v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 141, 656 N.E.2d 1276, we have not held that a shorter delay as under the circumstances here is unreasonable. The six-day delay noted by respondents in *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 308–309, 686 N.E.2d 238, was in addition to an approximately three-month delay in filing protests. Here there was no additional delay.

{¶ 31} Moreover, there is no discernible prejudice from Citizen Action's delay. Even if it had filed this action three days after the board upheld the protest, this still would have been an expedited election case, and the board does not claim that its ability to defend against the claim has been prejudiced. In addition, this case was fully briefed *before* the expiration of the absentee-ballot deadline, and even had the case been filed a few days earlier, this case would not necessarily have been decided before the passage of that deadline. Cf. cases cited in *Mason City School Dist. v. Warren Cty. Bd. of Elections,* 107 Ohio St.3d 373, 2005-Ohio-5363, 840 N.E.2d 147, ¶ 20 (statutory absentee-ballot deadline passed before election cases were filed).

{¶ 32} Therefore, laches does not bar us from considering the merits of Citizen Action's mandamus claim.

### Mandamus

{¶ 33} To be entitled to the writ, Citizen Action must establish a clear legal right to certification of the Natural Parkland Initiative on the November 6, 2007 general election ballot, a corresponding clear legal duty on the part of the board of elections to certify the initiative issue, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Gemienhardt v. Delaware Cty. Bd. of Elections,* 109 Ohio St.3d 212, 2006-Ohio-1666, 846 N.E.2d 1223, ¶ 29. Because of the proximity of the November 6 election, Citizen Action has established that it lacks an adequate remedy in the ordinary course of law. *State ex rel. Canales–Flores v. Lucas Cty. Bd. of Elections,* 108 Ohio St.3d 129, 2005-Ohio-5642, 841 N.E.2d 757, ¶ 10.

{¶ 34} For the remaining requirements, "[i]n extraordinary actions challenging the decision of a board of elections, the applicable standard is whether the board engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or pertinent law." *State ex rel. Valore v. Summit Cty. Bd. of Elections* (1999), 87 Ohio St.3d 144, 145, 718 N.E.2d 415. Citizen Action contends that the board abused its discretion and clearly disregarded applicable law in its determination that the initiative constitutes administrative action, which is an inappropriate subject for initiative or referendum.

### Legislative or Administrative Act

{¶ 35} Section 1f, Article II of the Ohio Constitution authorizes initiative and referendum power only on those questions that municipalities "may now or hereafter be authorized by law to control by *legislative* action." (Emphasis added.) "Conversely, '[p]ursuant to Section 1f, Article II of the Ohio Constitution, actions taken by a municipal legislative body, whether by ordinance, resolution, or other means, that constitute *administrative* action, are not subject to [initiative or] referendum proceedings.' (Emphasis added.)" *State ex rel.*

*Oberlin Citizens for Responsible Dev. v. Talarico,* 106 Ohio St.3d 481, 2005-Ohio-5061, 836 N.E.2d 529, ¶ 22, quoting *Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 82 Ohio St.3d 539, 697 N.E.2d 181, paragraph two of the syllabus.

{¶ 36} "The test for determining whether the action of a legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." *Donnelly v. Fairview Park* (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500, paragraph two of the syllabus.

{¶ 37} After applying this test to the Natural Parkland Initiative, we find it evident that the proposed ordinance is one that would enact a new law instead of one that would merely administer existing law. The new law would direct the acquisition of property and its permanent maintenance for use as a park, for recreation, and for preservation of green space.

{¶ 38} The board granted the protest against the initiative because the proposed ordinance "would be an administrative act, exercising the [eminent] domain laws in the State of Ohio." The protesters and the city had cited that portion of the initiative that directed that the city shall acquire land by purchase "and in doing so shall comply with all appropriate procedures and law of Ohio."

{¶ 39} As Citizen Action observes, however, a holding that an ordinance is administrative simply because it contains language directing that Ohio law should be followed would result in the extinction of "virtually all legislative actions." Manifestly, an ordinance can create a law but still provide that its implementation be in accordance with existing law.

{¶ 40} Moreover, notwithstanding the board's and amici's arguments to the contrary, the initiative does not expressly direct the city to appropriate property. It merely directs the city to acquire the land by purchase. Courts have specifically held that ordinances providing for acquisition of private property are legislative in nature and thus subject to initiative and referendum. *State ex rel. Malone v. Jacobs* (1932), 135 Kan. 513, 11 P.2d 739 (ordinance providing for condemnation and appropriation of private property for the purpose of widening a street was held to be legislative in nature and thus subject to referendum); *Reagan v. Sausalito* (1962), 210 Cal.App.2d 618, 26 Cal.Rptr. 775 (resolution declaring city's policy to acquire certain property for park purposes was a legislative act subject to referendum); see, also, *State ex rel. Hazel v. Cuyahoga Cty. Bd. of Elections* (1997), 80 Ohio St.3d 165, 169, 685 N.E.2d 224 (proposed ordinance concerning acquisition, construction, and regulation of penal facilities constituted legislative action subject to initiative). Similarly, the Natural Parkland Initiative proposes a new law under which the city will acquire private property for park purposes.

{¶ 41} Insofar as the initiative might require the appropriation of property, the right of eminent domain belongs to the sovereign power. *Ellis v. Ohio Turnpike Comm.* (1954), 162 Ohio St. 86, 92, 54 O.O. 27, 120 N.E.2d 719; *Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 48. That is, the power of eminent domain involves the exercise of *legislative* authority. See, e.g., *Kelo v. New London* (2005), 545 U.S. 469, 480, 125 S.Ct. 2655, 162 L.Ed.2d 439 (court defines "public purpose" for takings analysis broadly, "reflecting our longstanding policy of deference to *legislative judgments* in this field" [emphasis added] ); *Pontiac Improvement Co. v. Cleveland Metro. Park Dist. Bd. of Commrs.* (1922), 104 Ohio St. 447, 458, 135 N.E. 635 (express *legislative* power is needed for appropriation of private property). And ordinances directing the appropriation of property have been held to be legislative and subject to initiative and referendum. See, e.g., *Malone,* 135 Kan. 513, 11 P.2d 739. The board and amici curiae cite no pertinent authority to the contrary.

{¶ 42} Nor does the mere fact that certain public agencies are authorized by statute to appropriate property by virtue of a delegation of this authority by the General Assembly necessarily mean that the power is administrative rather than legislative. Insofar as the city argues this, it cites no precedent.

{¶ 43} There is also no indication—as the board appears to imply—that the initiative would compel the city to bypass the statutory procedures for appropriation should it become necessary to acquire the property. As noted previously, the initiative specifies that in acquiring the property, the city "shall comply with all appropriate procedures and law of Ohio." In fact, insofar as the board's claim could be construed as a challenge to the constitutionality or illegality of the substance of the initiative, that challenge is premature before the proposed legislation is enacted by the electorate. See, e.g., *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 6, 716 N.E.2d 1114 ("Any claims alleging the unconstitutionality or illegality of the substance of the proposed ordinance, or actions to be taken pursuant to the ordinance when enacted, are premature before its approval by the electorate").

{¶ 44} Moreover, "[a]ctions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative." 5 McQuillin, The Law of Municipal Corporations (3d Rev.Ed.2004) 407, Section 16:54. In addition, "an act or resolution constituting a declaration of public purpose and making provision for the ways and means of its accomplishment is generally legislative as distinguished from an act or resolution which merely carries out the policy or purpose already declared by the legislative body." Id. at 411.

{¶ 45} The Natural Parkland Initiative is of a permanent and general nature; if enacted, it would result in the acquisition and maintenance of land for a park.

The initiative also declares a purpose of preserving the land as a passive park, recreational area, and nature preserve and provides the means to accomplish that objective. In effect, the initiative makes the legislative decision whether to undertake the project of acquiring and preserving land for the stated reasons. See *Convention Ctr. Referendum Commt. v. Dist. of Columbia Bd. of Elections & Ethics* (D.C.App.1981), 441 A.2d 889, 908 ("Courts, however, have called initiatives 'legislative' when they have addressed the basic policy question whether or not to undertake a capital project, even after the project has begun"); *Duran v. Cassidy* (1972), 28 Cal.App.3d 574, 582, 104 Cal.Rptr. 793 (the people have the right to propose initiative halting development of golf course as part of city park even after construction of course has begun).

{¶ 46} The initiative does not simply execute any preexisting ordinance expressing a municipal plan to acquire the property for these purposes. This case is thus distinct from those in which the court has held that an enacted ordinance is administrative rather than legislative. Cf. *Oberlin Citizens*, 106 Ohio St.3d 481, 2005-Ohio-5061, 836 N.E.2d 529 (ordinance adopting a development agreement for the construction of improvements attendant to proposed development); *Buckeye Community*, 82 Ohio St.3d 539, 697 N.E.2d 181 (ordinance approving site plan for proposed development); *Donnelly*, 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500 (action of city council in failing to approve resubdivision of land).

{¶ 47} Therefore, under the court's well-established test for determining whether an ordinance is legislative or administrative, the Natural Parkland Initiative is legislative in nature because it creates a new law directing the acquisition of property and its permanent maintenance for use as a park, for recreation, and for preservation of green space; the ordinance does not implement any previous ordinances enacted for these purposes.

{¶ 48} Consequently, the board of elections abused its discretion and clearly disregarded applicable law by concluding that the Natural Parkland Initiative is an administrative action that is not the proper subject of municipal initiative. This holding is "consistent with our duty to liberally construe municipal initiative provisions to permit the exercise of the power of initiative." *State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 47.

### Other Grounds for the Protest

{¶ 49} The protesters and the city raised other grounds for the protest, i.e., that the initiative petition violates R.C. 3519.01 and Section 7.01 of the Montgomery Charter because it contains more than one subject or proposal of law and that the initiative petition deprives the city of its legislative authority by forbidding repeal of the proposed ordinance except by a majority vote at a general election. The city repeats these grounds in its amicus curiae brief. If either of these

grounds is correct, the board's decision to uphold the protest should not be vacated even if the decision was based on the board's erroneous determination that the proposed ordinance was administrative. Cf. *State ex rel. McGrath v. Ohio Adult Parole Auth.*, 100 Ohio St.3d 72, 2003-Ohio-5062, 796 N.E.2d 526, ¶ 8 ("Reviewing courts are not authorized to reverse a correct judgment on the basis that some or all of the lower court's reasons are erroneous").

{¶ 50} These additional claims lack merit. Although R.C. 3519.01 requires that "[o]nly one proposal of law or constitutional amendment to be proposed by initiative petition shall be contained in an initiative petition to enable the voters to vote on that proposal separately," the court has "consistently recognized that R.C. Chapter 3519 applies only to statewide initiative and referendum petitions." *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 228, 685 N.E.2d 754. The initiative here is not a statewide petition.[1]

{¶ 51} Section 7.01 of the Montgomery Charter provides, "No ordinance or resolution shall contain more than one subject which shall be expressed in its title." See, also, R.C. 731.19 ("No ordinance, resolution, or bylaw shall contain more than one subject, which shall be clearly expressed in its title").

{¶ 52} These provisions, however, could invalidate the Natural Parkland Initiative only if it is enacted. Therefore, as noted previously, until the ordinance is passed by the electorate, this claim is premature. *N. Main St. Coalition*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 38, citing *DeBrosse*, 87 Ohio St.3d at 6, 716 N.E.2d 1114. In fact, we have specifically held that an initiative petition is not invalid based on the claim that the proposed ordinance violates the R.C. 731.19 one-subject rule. *Hazel*, 80 Ohio St.3d at 169, 685 N.E.2d 224.

{¶ 53} Similarly, the protesters' and the city's last protest contention—that the proposed ordinance is invalid because one of its sections specifies that it can be repealed only "by vote of a majority of the electors in a general election"—is also premature. Even if that section were later found to be unlawful, the proposed initiative petition specifies that "the remaining provisions shall continue to be valid and enforceable."

{¶ 54} Therefore, the other grounds for the protest do not support the board's decision to invalidate the initiative petition.

## Attorney Fees

{¶ 55} Citizen Action requests an award of attorney fees. "In Ohio, the general rule is that absent a statute allowing attorney fees as costs, the prevailing

---

1. Citizen Action's argument that the protest was not timely filed under R.C. 3519.16 must likewise fail. See *State ex rel. Commt. for the Charter Amendment Petition–The Milliken Woods Preservation Assn. v. Hamilton* (2001), 93 Ohio St.3d 508, 510, 757 N.E.2d 294 ("R.C. 3519.16 is restricted to *statewide* initiative and referendum petitions, which this case does not involve" [emphasis sic] ).

party is not entitled to an award of attorney fees unless the party against whom the fees are taxed acted in bad faith." *State ex rel. Maloney v. Sherlock,* 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 55; *Pegan v. Crawmer* (1997), 79 Ohio St.3d 155, 156, 679 N.E.2d 1129.

{¶ 56} Citizen Action is not entitled to an award of attorney fees, because it cites no pertinent statute in support of its request and there is no evidence that the board of elections acted in bad faith when it upheld the protest against the initiative. Although Citizen Action also cites R.C. 733.61 and election cases involving R.C. Chapter 733 taxpayer actions against municipal officials, see *N. Main St. Coalition,* 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 48, this is not such an action. The board of elections is not a municipal official.

### Conclusion

{¶ 57} Citizen Action has established its entitlement to the requested extraordinary relief. The board of elections abused its discretion and clearly disregarded applicable law in upholding the protest and refusing to certify the initiative on the general election ballot, and Citizen Action lacks an adequate remedy in the ordinary course of law. Therefore, we grant a writ of mandamus to compel the board of elections to place the Natural Parkland Initiative on the November 6, 2007 election ballot.

Writ granted.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

---

Webb & Pillich, L.L.C., and Constance M. Pillich, for relator.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and David T. Stevenson, Assistant Prosecuting Attorney, for respondent.

Donnellon, Donnellon & Miller and Terrence M. Donnellon, urging denial of the writ for amicus curiae city of Montgomery.

Langdon & Hartman, L.L.C., and David R. Langdon, urging denial of the writ for amicus curiae Residents for a Responsible Montgomery.